**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| **ADAMS KEEGAN, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 2:16-cv-02152-SHM-cgc** |
| | ) | |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **PROTIVITI, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**FIRST AMENDED COMPLAINT**

COMES NOW Plaintiff Adams Keegan, Inc. and for its First Amended Complaint against Defendant Protiviti, Inc. states the following:

**I.      THE PARTIES**

1.      Plaintiff Adams Keegan, Inc. ("Adams Keegan") is a corporation organized and existing under the laws of the State of Tennessee and having its principal place of business located at 6750 Poplar Avenue, Suite 400, Memphis, TN 38138.

2.      Upon information and belief, Defendant Protiviti, Inc. ("Protiviti") is a corporation organized and existing under the laws of the State of Delaware and having its principal place of business located at 2844 Sand Hill Road, Menlo Park, California 34025. Protiviti is registered to do business in the State of Tennessee and can be served via its registered agent, National Corporate Research, Ltd., Inc., 992 Davidson Drive, Suite B, Nashville, Tennessee 37205.

## II.        JURISDICTION AND VENUE

3.        This is an action against Protiviti for trademark infringement, false designation of origin and unfair competition arising under the Lanham Act, as amended, 15 U.S.C. §§ 1114, 1125, and related state law claims, and copyright infringement arising under the Copyright Act, as amended, 17 U.S.C. §§ 101, *et seq.*

4.        This Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121, as it involves federal trademark law under the Lanham Act; under 28 U.S.C. § 1338(a), as it is a civil action arising under an Act of Congress relating to trademarks and copyrights; under 28 U.S.C. § 1338(b) as it involves unfair competition related to a claim under trademark laws; under 28 U.S.C. § 1331 as it involves a federal question; under 28 U.S.C. § 1332 as the action is between citizens of a State and citizens or subjects of a foreign state, and the amount in controversy in this action, exclusive of interest and costs, exceeds the sum of $75,000.00; and under 28 U.S.C. § 1367(a) for the claims that arise under Tennessee and Georgia law because they are substantially related to the claims that arise under the laws of the United States. Furthermore, this Court has pendent jurisdiction because both the state and federal claims are derived from a common nucleus of operative facts and considerations of judicial economy dictate the state and federal issues be consolidated for a single trial.

5.        This Court has personal jurisdiction over Protiviti based upon Protiviti offering to sell and/or selling its services in the State of Tennessee, based upon Protiviti's transaction of business in the State of Tennessee, and Protiviti's sufficient minimum contacts with the State of Tennessee.

6.        Venue is proper in this District under 28 U.S.C. § 1391 and 28 U.S.C. § 1400.

M AB1 2779051 v2
2911988-000022 05/23/2016

## III.       THE CONTROVERSY

### A.     ADAMS KEEGAN'S BUSINESS

7.      Adams Keegan is a privately-held, national business-to-business services company based in Memphis, Tennessee, with nearly $1 billion in annualized revenue.

8.      Adams Keegan is engaged in the business of providing a range of employment and administrative services to hundreds of businesses, including payroll, employee benefits, workers' compensation, human resources management and regulatory compliance guidance.

9.      The services that Adams Keegan offers include a web-based self-service application for managers and employees via a secure, proprietary human resources management system, marketed under the name Efficenter®.

10.      Through the Efficenter® application, clients and their employees enter their user IDs and passwords to access a variety of information, including sensitive personal data such as an employee's date of birth, social security number, W-2, bank account number, and much more.

11.      Adams Keegan has invested significant resources not only into the development of the Efficenter® system, but also into data security for its Efficenter® system, as Adams Keegan would be irreparably harmed if the confidential data entrusted to it were to be compromised by a party with nefarious interests.

12.      Adams Keegan has obtained federal copyright registrations for the  HTML code for the login page for its Efficenter® system.  The current HTML code for the login page for Adams Keegan's Efficenter® system was registered at the United States Copyright Office under U.S. Copyright Registration No. TX 8-155-011 (the "'011 Registration"), with an effective date of February 23, 2016.  A copy of the Certificate of Registration and the associated deposit are attached collectively hereto as **Exhibit A**.  The previous version of the HTML code for the login page for Adams Keegan's Efficenter® system was also registered at the United States Copyright

3

Office under U.S. Copyright Registration No. TX 8-154-370 (the "'370 Registration"), with an effective date of February 23, 2016.  A copy of the Certificate of Registration and the associated deposit are attached collectively hereto as **Exhibit B**.

**B.     ADAMS KEEGAN'S TRADEMARKS**

13.     For nearly 20 years, Adams Keegan has been using the trademark ADAMS KEEGAN, alone and in combination with certain designs, to advertise and sell its employment and administrative services.

14.     Adams Keegan is the owner of common law and federal trademark rights for its word mark ADAMS KEEGAN for employment and administrative services, including payroll, employee benefits, workers' compensation, human resources management and regulatory compliance guidance.

15.     In addition to Adams Keegan's common law trademark rights, on September 29, 2015, Adams Keegan obtained from the U.S. Patent and Trademark Office a federal trademark

registration for its ADAMS KEEGAN (and Design) trademark  , U.S. Registration No. 4,823,018, for use with certain services, including human resources outsourcing, human resources management, payroll preparation, payroll tax deposit filing and reporting, as well as providing temporary use of non-downloadable computer software for employee and personnel related services, namely, payroll administration, payroll tax calculation, tax regulation compliance, payroll tax preparation, electronic payroll tax filing and reporting, electronic document storage, time and attendance tracking, employee benefits administration, employee risk and safety training, employee counseling and support programs, employee

pension and retirement funds administration, employee flexible spending accounts administration, workers compensation, employee recruiting, and pre-employment background screening.   Attached as **Exhibit C** is a true and correct copy of Adams Keegan's federal trademark registration for its ADAMS KEEGAN (and Design) trademark, U.S. Registration No. 4,823,018.

16.   Adams Keegan's word mark ADAMS KEEGAN and ADAMS KEEGAN (and Design) trademarks are hereinafter collectively referred to as the "ADAMS KEEGAN Trademarks."

17.   Adams Keegan is the owner of common law and federal trademark rights for its word mark EFFICENTER.  Adams Keegan is also the owner of a federal trademark registration

**efficenter**

for EFFICENTER (and Design),                          , U.S. Registration No. 3,580,224, for use with providing temporary use of non-downloadable computer software for employee and personnel related services, namely, payroll administration, payroll tax calculation, tax regulation compliance, payroll tax preparation, electronic payroll tax filing and reporting, electronic document storage, time and attendance tracking, employee benefits administration, employee risk and safety training, employee counseling and support programs, employee pension and retirement funds administration, employee flexible spending accounts administration, workers compensation, employee recruiting, and pre-employment background screening.   Attached as **Exhibit D** is a true and correct copy of Adams Keegan's federal trademark registration for its EFFICENTER (and Design) trademark, U.S. Registration No. 3,580,224.

18.   Adams Keegan's word mark EFFICENTER and EFFICENTER (and Design) trademarks are hereinafter collectively referred to as the "EFFICENTER Trademarks."

19.     Adams Keegan has been using the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks in a prominent and distinctive manner in interstate commerce so as to distinguish the source of its services from those of others, and has spent significant effort and sums of money in advertising and otherwise promoting the sale of its services under the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks in the State of Tennessee and around the United States.  Adams Keegan has spent substantial amounts of money in advertising related to the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks.

20.     As a result of Adams Keegan's long and exclusive use of its ADAMS KEEGAN Trademarks and EFFICENTER Trademarks, the large number of businesses that use Adams Keegan's services, and the large amount of money spent or foregone for advertising and promotion of the services sold under the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks, the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks have become, through widespread and favorable public acceptance and recognition, exclusive assets of substantial value as symbols of Adams Keegan, its quality of services and its good will.

21.     Due to Adams Keegan's use and promotion, the industry and purchasing public has come to know and recognize the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks as a designation identifying Adams Keegan as the source of certain employment and administrative services.  Accordingly, the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks have developed and represent valuable goodwill which rightfully belongs exclusively to Adams Keegan.

22.     Further, in light of the inherent and acquired distinctiveness of the ADAMS KEEGAN Trademarks, the duration and use of the mark throughout Tennessee and Georgia, the extent of the advertising of the ADAMS KEEGAN Trademarks throughout Tennessee and

M AB1 2779051 v2
2911988-000022 05/23/2016

Georgia, and the high degree of the ADAMS KEEGAN Trademarks recognition in Tennessee and Georgia in regard to the services provided by Adams Keegan, the ADAMS KEEGAN Trademarks are famous in Tennessee and Georgia as well as throughout the United States.

## C.   PROTIVITI'S INFRINGING PHISHING EMAIL SCHEME

23.   Protiviti is a global for-profit corporation specializing in consulting services in the areas of finance, technology, operations, governance, risk, and internal audit through a network of more than 70 offices in over 20 countries.

24.   Protiviti is a wholly owned subsidiary of Robert Half International, Inc.

25.   Protiviti offers numerous services, including but not limited to IT consulting services in IT governance, security, data management, applications, compliance, organizational design, third-party risk management, compliance management, enterprise risk management, financial investigations, risk strategy & management, and fraud risk management.  As part of its services, Protiviti also is in the business of creating publicly available websites that purport to offer services similar to others, such as Adams Keegan's Efficenter website, for the purpose of attempting to mislead its clients and the public at large.  According to its website, located at domain www.protiviti.com, Protiviti also offers "Vulnerability and Penetration Testing," which "scrutinizes the people, process and technology in your organization."  See Screenshot of Protiviti's Website, attached as **Exhibit E**.

26.   Upon information and belief, Protiviti and Adams Keegan share a mutual client which engaged Protiviti to conduct an audit of the client's security compliance and data privacy, including performing an internal audit testing of the client's vulnerability to cybercrime.

27.   Protiviti planned an audit based upon penetration testing and social engineering, as designed by Protiviti's penetration tester, Chris Silvers.

28.     Upon information and belief, in conducting this audit, Protiviti considered using a webmail "phishing" email scheme in order to identify if the client's employees would click on a link that they should otherwise not click.

29.     Upon information and belief, in designing this test, Protiviti spoke with employees of the client, including one person that advised Protiviti that the client's employees are familiar with Adams Keegan's Efficenter® system, offered through the websites located at domain names www.efficenter.com and www.adamskeegan.com/efficenter, and therefore Protiviti chose to "mirror" its phishing email scheme on Adams Keegan's Efficenter® website in an effort to get a "good response" to Protiviti's phishing email scheme.

30.     Upon information and belief, to execute this phishing email scheme, Protiviti employee Chris Silvers, at the direction of Protiviti Senior Manager Chris Manning and through his limited liability company, CG Silvers LLC, created and registered the website located at domain name www.myefficenter.com (the "Infringing Website" or the "fake myefficenter.com website") on or about November 18, 2015, employing the ADAMS KEEGAN Trademarks and the EFFICENTER Trademarks without authorization, permission, or consent from Adams Keegan.  *See*  GoDaddy WHOIS Search Results for www.myefficenter.com, attached as **Exhibit F**.

31.     Upon information and belief, Protiviti advertised and promoted its consulting services under the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks to the client and its employees and advertised and promoted the Infringing Website under the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks throughout the United States using the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks as an indication of the source of the Infringing Website.

32.     The ADAMS KEEGAN Trademarks and EFFICENTER Trademarks employed by Protiviti are identical to and thus confusingly similar to Adams Keegan's well-known ADAMS KEEGAN Trademarks and EFFICENTER Trademarks in sound, appearance and meaning.

33.     Protiviti's uses of the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks, and variants thereof, likely caused consumer confusion and damage and have caused actual confusion and damage to Adams Keegan's brand and reputation.

34.     Upon information and belief, the Infringing Website presented a login page that appeared identical to the login page for Adams Keegan's Efficenter® system without authorization, permission, or consent from Adams Keegan.  An image showing Adams Keegan's Efficenter® system login page is set forth below:



**Figure 1: Adams Keegan Efficenter® Login Page**

35.     Once Protiviti had created the Infringing Website, Protiviti then proceeded with the next step of its phishing email scheme using the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks in a manner directly related to Protiviti's consulting services.  On or about November 24, 2015, Protiviti through its employees Chris Manning and Chris Silvers,

distributed a phishing email ("Protiviti's Phishing Email") to the client's employees, directing recipients to click on a link to myefficenter.com in order to earn a free iPad®.  The email stated as follows:

**From:** Adams Keegan Administrator [mailto:admin@myefficenter.com]
**Sent:** Tuesday, November 24, 2015 9:23 AM
**To:** REDACTED
**Subject:** Try the new Efficenter, Win an iPad Pro!

We are pleased to announce that the new Efficenter interface is almost ready for prime time!

One of the main features of this new interface is that it integrates with your existing network login, so you don't have to remember another password.

To ensure a smooth transition, we are asking a select group of our partners to login at the new site here.

During this pilot phase, you will be taken to the Efficenter specialty page after logging in.

**The best part:  The first 20 employees who log in will automatically be entered to win a new iPad Pro!**

Thank you for your time.
--

Adams Keegan, Inc.
Office: 770.200.7225
Fax: 770.426.9074


www.adamskeegan.com

Accredited by ESAC
www.esacorp.org



        36.     Protiviti's   Phishing   Email   came   from   a   fake   email   address, admin@myefficenter.com, which appeared in Protiviti's Phishing Email under the title "Adams Keegan Administrator," without authorization, permission, or consent from Adams Keegan.  The subject line of Protiviti's Phishing Email stated "Try the new Efficenter, Win an iPad Pro!," and included in the body of the email a message announcing "the new Efficenter" and a solicitation to click an embedded link to "myefficenter.com" to win an "iPad Pro."  The email featured the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks  and a link to Adams Keegan's website located at domain name www.adamskeegan.com.

10

37.     On Tuesday, November 24, 2015, at 9:23 AM EST, the client's employee received Protiviti's Phishing Email.  Upon information and belief, the employee in fact did click on the link which took the person to what appeared to be the login page for Efficenter and she entered her user ID and password.

38.     Upon information and belief, multiple people who received Protiviti's Phishing Email incorrectly believed that and were actually confused as to whether Adams Keegan was providing the services set forth in Protiviti's Phishing Email and the fake myefficenter.com website and as a result followed the instructions contained in Protiviti's Phishing Email, misleading the email recipients into believing that they would receive an iPad® Pro from Adams Keegan.

39.     After the distribution of Protiviti's Phishing Email, Adams Keegan received an email from one of the client's employees inquiring "is it legit."

40.     Once Adams Keegan received the inquiry regarding Protiviti's Phishing Email, it immediately began urgently devoting significant time and resources to address the threat now known to have originated from Protiviti.

41.     Upon clicking the link in Protiviti's Phishing Email, the user was taken to the fake, unauthorized website myefficenter.com, which is an exact replica of the login page for Adams Keegan's Efficenter® system web portal, located at the domain name efficenter.com.

42.     Upon submitting login credentials, the fake myefficenter.com website redirected the user to an information page for Adams Keegan's Efficenter® system, located at http://www.adamskeegan.com/Specialties/Efficenter.

43.     The WHOIS information for the fake myefficenter.com website indicated that the website was registered in Paris, France.

M AB1 2779051 v2
2911988-000022 05/23/2016

44.      It appeared that Protiviti's Phishing Email and the fake myefficenter.com website were setup to gather the login credentials of users of Adams Keegan's Efficenter® web-based system.

45.      In response to Protiviti's Phishing Email and in light of the serious real damage that was occurring to the ADAMS KEEGAN Trademarks, the EFFICENTER Trademarks and Adams Keegan's brand, Adams Keegan diverted significant resources to immediately begin working to eradicate the threat, including Adams Keegan's senior management.  The resources that Adams Keegan diverted cost Adams Keegan extensive direct labor losses attributable to Protiviti's Phishing Email and the fake myefficenter.com website.

46.      The fake myefficenter.com website was also copying and linking to certain images from the Efficenter® website, in violation of Adams Keegan's intellectual property rights.

47.      The fake myefficenter.com website also copied and stole the entirety of Adams Keegan's HTML code for the login page for its Efficenter® web-based system and used and published the HTML code on the fake myefficenter.com website.

48.      Protiviti had access to the HTML code for the Efficenter® web-based system as it is publicly available through internet browsers such as Microsoft Internet Explorer or Google Chrome and can be easily accessed by going to the website located at https://www.adamskeegan.com/efficenter/, right clicking on the page, and then selecting "View Source" in Microsoft Internet Explorer or "View Page Source" in Google Chrome, for example.

49.      Protiviti's fake myefficenter.com website has directly interfered with Adams Keegan's business relationship with Adams Keegan's clients.  Adams Keegan, on Wednesday, November 25, 2015, at 9:41 AM CST, received an email from another Adams Keegan client in

12

North Dakota informing Adams Keegan that the client's employee(s) had found the fake myefficenter.com website through a Google® search, evidencing the employee's actual confusion as to whether the fake myefficenter.com website was being provided by Adams Keegan. Consequently, Protiviti's fake myefficenter.com website was publicly available and was visited by persons who never received Protiviti's Phishing Email, but instead were people who were searching on the internet for Adams Keegan's legitimate websites and found Protiviti's fake myefficenter.com website instead, resulting in actual confusion on the part of the website visitors.

50.    As a result, Adams Keegan was required to address concerns about the security of Adams Keegan's Efficenter® system.

51.    As of Wednesday, November 25, 2015, the fake myefficenter.com website was appearing in Google® search results for "myefficenter" and "efficenter."

52.    Adams Keegan has had multiple conversations with the client's Chief Operating Officer to discuss the gravity of the situation and the damage, both real and potential, to the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks and Adams Keegan's brand.

53.    On Wednesday, November 25, 2015, Bob Frank, Adams Keegan's Chief Information Officer and Senior Vice-President, spoke on the phone with the project manager for Protiviti, Chris Manning, that designed, approved, and authorized Protiviti's Phishing Email and the fake myefficenter.com website.

54.    Protiviti has admitted that neither Mr. Manning, Mr. Silvers, CG Silvers, LLC, or Protiviti sought or attempted to seek Adams Keegan's authorization, permission, or consent to use the ADAMS KEEGAN Trademarks, EFFICENTER Trademarks, or Adams Keegan's copyrighted HTML code for the login page for its Efficenter® system. Mr. Manning described

Protiviti's failure to obtain Adams Keegan's authorization, permission, or consent to use the ADAMS KEEGAN Trademarks, EFFICENTER Trademarks, or Adams Keegan's copyrighted HTML code as an "oversight."

55.     Protiviti also admitted that Michael Walter, the managing director of Protiviti's Security Operations Center and the superior over Mr. Manning was aware of Protiviti's Phishing Email and the fake myefficenter.com website.

56.     Adams Keegan legitimately believed that its data, including the login information for its Efficenter® users, may have been compromised as a result of Protiviti's Phishing Email and the fake myefficenter.com website.

57.     Furthermore, Adams Keegan is still in the process of investigating what other clients were exposed to the fake myefficenter.com website via Google® searches or forwarded emails.

58.     Adams Keegan takes very seriously the fact its 28-year-old business was jeopardized by this fraudulent activity and has suffered significant reputational damage as a result of Adams Keegan's clients being exposed to Protiviti's fraudulent scheme.

59.     Without any authority, Protiviti publicly impersonated Adams Keegan on the internet and through its Phishing Email, causing irreparable injury and other damage to Adams Keegan's business, reputation, and goodwill in the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks.

60.     Prior to Protiviti's use of the ADAMS KEEGAN Trademarks, EFFICENTER Trademarks, and Adams Keegan's HTML code in Protiviti's Phishing Email and the fake myefficenter.com website, Protiviti knew or should have known of Adams Keegan's copyrights in its HTML code, its rights in the ADAMS KEEGAN Trademarks, rights in the EFFICENTER

Trademarks, and the damage that could be done to Adams Keegan's brand and reputation through the appearance of compromised security, especially considering the nature and sensitivity of the information that Adams Keegan's clients provide to Adams Keegan as well as misleading people to believe that Adams Keegan would provide an iPad® to persons signing into the fake myefficenter.com website, further damaging Adams Keegan's reputation and goodwill with its customers and prospective customers when no iPad® would be provided by Adams Keegan.

### IV.        CAUSES OF ACTION

### COUNT I
### INFRINGEMENT OF A FEDERALLY REGISTERED TRADEMARK

61.      Adams Keegan incorporates and realleges the foregoing paragraphs as if fully set forth herein.

62.      Protiviti has infringed Adams Keegan's federally registered ADAMS KEEGAN Trademarks and EFFICENTER Trademarks in interstate commerce by various acts, including, without limitation, purporting to offer for sale, promote, and advertise the sale of consulting and business services under the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks and through the domain name www.myefficenter.com, which is confusingly similar to Adams Keegan's federally registered EFFICENTER Trademark.

63.      Protiviti's uses of the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks for its consulting and business services, including for Protiviti's Phishing Email and the fake myefficenter.com website, is without Adams Keegan's permission or authority and is likely to cause confusion, to cause mistake and/or to deceive the purchasing public and also constitutes initial interest confusion.

M AB1 2779051 v2
2911988-000022 05/23/2016

64.     Protiviti's uses of the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks has been made notwithstanding Adams Keegan's well-known and prior established rights in the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks with constructive notice of Adams Keegan's federal registration rights under 15 U.S.C. § 1072.

65.     Protiviti's conduct constitutes infringement of the federally registered ADAMS KEEGAN Trademarks and EFFICENTER Trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114.

66.     Protiviti's infringing activities have caused and, unless enjoined by this Court, will continue to cause irreparable injury and other damage to Adams Keegan's business, reputation and good will in the federally registered ADAMS KEEGAN Trademarks and EFFICENTER Trademarks, for which Adams Keegan has no adequate remedy at law.

## COUNT II
## UNFAIR COMPETITION IN VIOLATION OF 15 U.S.C. § 1125

67.     Adams Keegan incorporates and realleges the foregoing paragraphs as if fully set forth herein.

68.     Protiviti's unauthorized uses in commerce of the ADAMS KEEGAN Trademarks, EFFICENTER Trademarks, and the myefficenter.com website, which are identical to and confusingly similar to the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks, has been done with the intent to deceive the public into believing that services offered or sold by Protiviti are made by, approved by, sponsored by, or affiliated with Adams Keegan.

69.     Protiviti's wrongful activities as set forth herein were committed with the intent to pass off Protiviti's services as the services of, approved by, sponsored by, or affiliated with Adams Keegan, and with the intent to deceive and defraud the public.

16

70.      Protiviti's wrongful activities constitute unfair competition and passing off in violation of Section 43(a) of the Trademark Act of 1946, as amended, 15 U.S.C. § 1125.

71.      Protiviti's wrongful activities have caused, and unless enjoined by this Court, will continue to cause irreparable injury and other damage to Adams Keegan's business, reputation and good will in the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks, for which Adams Keegan has no adequate remedy at law.

## COUNT III
## FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125

72.      Adams Keegan incorporates and realleges the foregoing paragraphs as if fully set forth herein.

73.      Protiviti has caused services to enter interstate commerce designated with variations of the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks.

74.      Protiviti's unauthorized uses in commerce of the ADAMS KEEGAN Trademarks, EFFICENTER Trademarks, and the myefficenter.com website, which are identical to and confusingly similar to the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks, constitute a false designation of origin which is likely to cause and has caused confusion and mistake, and likely to deceive and has deceived as to the affiliation, connection, or association of Protiviti with Adams Keegan and as to the origin, sponsorship, or approval of Protiviti's services by Adams Keegan.

75.      Protiviti's acts are in violation of 15 U.S.C. § 1125 in that Protiviti has used in connection with its services a false designation of origin, or a false or misleading description and representation of fact, which is likely to cause and has caused confusion and mistake, and is likely to deceive and has deceived as to the affiliation, connection, or association of Protiviti

with Adams Keegan and as to the origin, sponsorship, and approval of Protiviti's services and commercial activities by Adams Keegan.

76.     Protiviti's wrongful activities have caused, and unless enjoined by this Court, will continue to cause irreparable injury and other damage to Adams Keegan's business, reputation and good will in the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks, for which Adams Keegan has no adequate remedy at law

**COUNT IV**
**TENNESSEE STATUTORY TRADEMARK DILUTION**

77.     Adams Keegan incorporates and realleges the foregoing paragraphs as if fully set forth herein.

78.     This count arises under the Tennessee Trademark Act of 2000, Tenn. Code Ann. § 47-25-501, *et seq.*

79.     The ADAMS KEEGAN Trademarks are distinctive or have acquired secondary meaning and are famous in Tennessee.

80.     Protiviti, with full knowledge of the public recognition and fame of the ADAMS KEEGAN Trademarks and acting in bad faith, intended to and willfully traded on goodwill associated with the ADAMS KEEGAN Trademarks.

81.     Protiviti's wrongful activities, including its use of the ADAMS KEEGAN Trademarks and trade name, has created a likelihood of dilution of the distinctive quality of the ADAMS KEEGAN Trademarks and trade name and/or a likelihood of injury to Adams Keegan's business reputation.

82.     Protiviti's acts constitute violations of Tenn. Code Ann. §§ 47-25-513(a) and (b).

M AB1 2779051 v2
2911988-000022 05/23/2016

83.     Adams Keegan is entitled to relief enjoining Protiviti's wrongful activities set forth herein, damages, and all other available statutory remedies due to Protiviti's Phishing Email scheme.

## COUNT V
## GEORGIA STATUTORY TRADEMARK DILUTION

84.     Adams Keegan incorporates and realleges the foregoing paragraphs as if fully set forth herein.

85.     This count arises under Georgia's trademark dilution statute, O.G.C.A. § 10-1-451(b).

86.     The ADAMS KEEGAN Trademarks are well-known and highly regarded in Georgia and became so long before Protiviti's Phishing Email scheme and infringing activities.

87.     Protiviti's wrongful activities set forth herein, including its unauthorized use of the ADAMS KEEGAN Trademarks, have caused injury to Adams Keegan's business reputation and diluted the distinctive quality of the ADAMS KEEGAN Trademarks in violation of O.G.C.A. § 10-1-451(b), and unless enjoined by this Court, will continue to cause irreparable injury and other damage to Adams Keegan's business, reputation and good will in the ADAMS KEEGAN Trademarks, for which Adams Keegan has no adequate remedy at law.

## COUNT VI
## GEORGIA STATUTORY FRAUDULENT ENCROACHMENT

88.     Adams Keegan incorporates and realleges the foregoing paragraphs as if fully set forth herein.

89.     This count arises under O.G.C.A. § 23-2-55.

90.     Protiviti, through its unauthorized uses in commerce of the ADAMS KEEGAN Trademarks, EFFICENTER Trademarks, and the myefficenter.com website, which are identical

to and confusingly similar to the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks, has fraudulently encroached upon Adams Keegan's rights in violation of O.G.C.A. § 23-2-55, and such actions constitute unfair competition under O.G.C.A. § 23-2-55.

91.     Protiviti's unauthorized uses in commerce of the ADAMS KEEGAN Trademarks, EFFICENTER Trademarks, and the myefficenter.com website was done with the intent of misleading and deceiving the public so as to pass off Protiviti's business and services as the business and services of Adams Keegan.

92.     Protiviti's wrongful activities set forth herein were fraudulent, willful, and malicious, such that Protiviti's conduct raises the presumption of a conscious indifference on the part of Protiviti as to the consequences of its actions.

93.     Adams Keegan is entitled to relief enjoining Protiviti's wrongful activities set forth herein, damages, and all other available statutory remedies.

## COUNT VII
## VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT

94.     Adams Keegan incorporates and realleges the foregoing paragraphs as if fully set forth herein.

95.     This count arises under the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, *et seq*.

96.     Protiviti's adoption and use in Tennessee of the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks in connection with Protiviti's consulting and business services and the domain name www.myefficenter.com, are likely to cause consumer confusion or mistake as to the affiliation, connection or association of Protiviti's services with Adams Keegan and is likely to cause consumers to falsely believe that Protiviti's phishing activities originated with or are sponsored by or are approved by Adams Keegan.

M AB1 2779051 v2
2911988-000022 05/23/2016

97.     By adopting and using in connection with its consulting and business services the ADAMS KEEGAN Trademarks, EFFICENTER Trademarks, and the domain name www.myefficenter.com, Protiviti is falsely passing off its phishing services as those of Adams Keegan and unfairly damaging the good will and reputation of Adams Keegan.

98.     Protiviti's acts constitute unfair or deceptive practices in violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-104.

99.     Specifically, Protiviti's acts falsely passed off Protiviti's services as those of Adams Keegan in violation of Tenn. Code Ann. § 47-18-104(b)(1).

100.    Protiviti's acts caused a likelihood of confusion or misunderstanding and actual confusion or misunderstanding as to the source, sponsorship, or approval of Protiviti's services by Adams Keegan in violation of Tenn. Code Ann. § 47-18-104(b)(2).

101.    Protiviti's acts caused a likelihood of confusion or misunderstanding and actual confusion or misunderstanding as to an affiliation, connection, or association between Protiviti and Adams Keegan in violation of Tenn. Code Ann. § 47-18-104(b)(3).

102.    Protiviti, through its acts set forth herein, has represented that its services have the sponsorship, approval, or affiliation of Adams Keegan when Protiviti does not have Adams Keegan's sponsorship or approval or an affiliation with Adams Keegan in violation of Tenn. Code Ann. § 47-18-104(b)(5).

103.    Protiviti, through its acts set forth herein, has advertised services with intent not to sell the services as advertised in violation of Tenn. Code Ann. § 47-18-104(b)(9).

104.    Protiviti, through its acts set forth herein, represented that a consumer transaction conferred or involved rights, remedies, or obligations that Protiviti did not have or involve or which were prohibited by law in violation of Tenn. Code Ann. § 47-18-104(b)(12), through its

Phishing Email that represented to recipients of the Phishing Email that if they logged in to the fake myefficenter.com website then the recipient would "automatically be entered to win a new iPad Pro" from Adams Keegan.

105.    Protiviti, through its acts set forth herein, has used an advertisement containing an offer to sell goods or services when the offer is not a bone fide effort to sell the advertised goods or services in violation of Tenn. Code Ann. § 47-18-104(b)(22).

106.    Protiviti, through its acts set forth herein, publicly impersonated Adams Keegan on the internet and through its Phishing Email, causing irreparable injury and other damage to Adams Keegan's business, reputation, and good will in the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks.

107.    Protiviti's use of unfair and deceptive practices is willful and knowing, thus entitling Adams Keegan to treble damages and attorneys' fees pursuant to Tenn. Code Ann. § 47-18-109.

108.    Protiviti's actions have caused, and unless enjoined by this Court, will continue to cause irreparable injury and other damage, for which Adams Keegan has no adequate remedy at law.

### COUNT VIII
### VIOLATION OF THE GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT

109.    Adams Keegan incorporates and realleges the foregoing paragraphs as if fully set forth herein.

110.    This count arises under the Georgia Uniform Deceptive Trade Practice Act, O.G.C.A. § 10-1-370, *et seq*.

111.    Protiviti's adoption and use in Georgia of the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks in connection with Protiviti's consulting and business services

and the domain name www.myefficenter.com, are likely to cause consumer confusion or mistake as to the affiliation, connection or association of Protiviti's services with Adams Keegan and is likely to cause consumers to falsely believe that Protiviti's phishing activities originated with or are sponsored by or are approved by Adams Keegan.

112.    By adopting and using in connection with its consulting and business services the ADAMS   KEEGAN   Trademarks,   EFFICENTER   Trademarks,   and   the   domain   name www.myefficenter.com, Protiviti is falsely passing off its phishing services as those of Adams Keegan and unfairly damaging the good will and reputation of Adams Keegan.

113.    Protiviti's acts constitute unfair or deceptive practices in violation of the Georgia Uniform Deceptive Trade Practice Act, O.G.C.A. § 10-1-370, *et seq*.

114.    Specifically, Protiviti's acts falsely passed off Protiviti's services as those of Adams Keegan in violation of O.G.C.A. § 10-1-372(a)(1).

115.    Protiviti's acts caused a likelihood of confusion or misunderstanding and actual confusion or misunderstanding as to the source, sponsorship, approval, or certification of Protiviti's services by Adams Keegan in violation of O.G.C.A. § 10-1-372(a)(2).

116.    Protiviti's acts caused a likelihood of confusion or misunderstanding and actual confusion or misunderstanding as to an affiliation, connection, or association with or certification by Adams Keegan in violation of O.G.C.A. § 10-1-372(a)(3).

117.    Protiviti, through its acts set forth herein, has represented that its services have the sponsorship and/or approval of Adams Keegan when Protiviti does not have Adams Keegan's sponsorship or approval or an affiliation with Adams Keegan in violation of O.G.C.A. § 10-1-372(a)(5).

118.    Protiviti, through its acts set forth herein, has advertised services with intent not to sell the services as advertised in violation of O.G.C.A. § 10-1-372(a)(9).

119.    Protiviti, through its acts set forth herein, has engaged in conduct which creates a likelihood of confusion or of misunderstanding as to an affiliation, connection, or association of Protiviti with Adams Keegan and as to the origin, sponsorship, and approval of Protiviti's services and commercial activities by Adams Keegan, in violation of O.G.C.A. § 10-1-372(a)(12).

120.    Protiviti's use of unfair and deceptive practices is willful and knowing, thus entitling Adams Keegan to its attorneys' fees and costs pursuant to O.G.C.A. § 10-1-373(b).

121.    Protiviti's actions have caused, and unless enjoined by this Court, will continue to cause irreparable injury and other damage, for which Adams Keegan has no adequate remedy at law.

## COUNT IX
## VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT

122.    Adams Keegan incorporates and realleges the foregoing paragraphs as if fully set forth herein.

123.    This count arises under Georgia's Fair Business Practices Act of 1975, O.G.C.A. § 10-1-390, *et seq*.

124.    Protiviti's adoption and use in Tennessee of the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks in connection with Protiviti's consulting and business services and the domain name www.myefficenter.com, are likely to cause consumer confusion or mistake as to the affiliation, connection or association of Protiviti's services with Adams Keegan and is likely to cause consumers to falsely believe that Protiviti's phishing activities originated with or are sponsored by or are approved by Adams Keegan.

24

125.   By adopting and using in connection with its consulting and business services the ADAMS KEEGAN Trademarks, EFFICENTER Trademarks, and the domain name www.myefficenter.com, Protiviti is falsely passing off its phishing services as those of Adams Keegan and unfairly damaging the good will and reputation of Adams Keegan.

126.   Protiviti's wrongful activities as set forth herein constitute unfair or deceptive practices in violation of the Georgia Fair Business Practices Act of 1975, O.G.C.A. § 10-1-390, *et seq.*

127.   Specifically, Protiviti, through its wrongful activities set forth herein, falsely passed off its services as those of Adams Keegan in violation of O.G.C.A. § 10-1-393(b)(1).

128.   Protiviti, through its wrongful activities set forth herein, caused actual confusion or actual misunderstanding as to the source, sponsorship, approval, or certification of Protiviti's services by Adams Keegan in violation of O.G.C.A. § 10-1-390(b)(2).

129.   Protiviti, through its wrongful activities set forth herein, caused actual confusion or actual mistake as to an affiliation, connection, or association with or certification by Adams Keegan in violation of O.G.C.A. § 10-1-390(b)(3).

130.   Protiviti, through its wrongful activities set forth herein, has represented that its services have the sponsorship and/or approval of Adams Keegan when Protiviti does not have Adams Keegan's sponsorship or approval or an affiliation with Adams Keegan in violation of O.G.C.A. § 10-1-390(b)(5).

131.   Protiviti, through its wrongful activities set forth herein, advertised services with intent not to sell the services as advertised in violation of O.G.C.A. § 10-1-390(b)(9).

M AB1 2779051 v2
2911988-000022 05/23/2016

132.     Protiviti's actions have caused, and unless enjoined by this Court, will continue to cause irreparable injury and other damage, for which Adams Keegan has no adequate remedy at law.

## COUNT X
## GEORGIA STATUTORY FALSE ADVERTISING

133.     Adams Keegan incorporates and realleges the foregoing paragraphs as if fully set forth herein.

134.     This count arises under O.G.C.A. §§ 10-1-420 and 421.

135.     Protiviti, with the intent to deceive and mislead the public as to the source of the services offered in its Phishing Email, made and disseminated to the public the Phishing Email and fake myefficenter.com website by widespread publication, which contained statements concerning facts that were untrue and fraudulent and were known by Protiviti and its agents to be untrue or fraudulent.

136.     Protiviti, through its Phishing Email and the fake myefficenter.com website, made material false representation of facts in commercial advertisements which deceived consumers and damaged the business of Adams Keegan.

137.     Protiviti's actions have caused, and unless enjoined by this Court, will continue to cause irreparable injury and other damage, for which Adams Keegan has no adequate remedy at law, and therefore Adams Keegan is entitled to recover from Protiviti all damages provided by law.

## COUNT XI
## GEORGIA & TENNESSEE COMMON LAW TRADEMARK INFRINGEMENT

138.     Adams Keegan incorporates and realleges the foregoing paragraphs as if fully set forth herein.

M AB1 2779051 v2
2911988-000022 05/23/2016

139.     This count arises under the Georgia and Tennessee common law of trademark infringement.

140.     Adams Keegan is the owner of the common law rights in the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks, which are well known, distinctive and recognized as denoting high-quality services and products to the purchasing public throughout Georgia, Tennessee, and the United States.  Due to such reputation and public awareness, Adams Keegan has established valuable good will in connection with its common law ADAMS KEEGAN Trademarks and EFFICENTER Trademarks.

141.     Protiviti's adoption and use of the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks in connection with its consulting and business services and the domain name www.myefficenter.com, each of which is confusingly similar to the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks, is likely to cause and has caused confusion or mistake and has and will deceive the public into associating Protiviti's phishing services with Adams Keegan.

142.     These acts constitute common law trademark infringement and are causing damage and irreparable injury to Adams Keegan for which Adams Keegan has no adequate remedy at law.

**COUNT XII**
**GEORGIA & TENNESSEE COMMON LAW UNFAIR COMPETITION**

143.     Adams Keegan incorporates and realleges the foregoing paragraphs as if fully set forth herein.

144.     This count arises under the Georgia and Tennessee common law of unfair competition.

M AB1 2779051 v2
2911988-000022 05/23/2016

145.     Protiviti's adoption and use of the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks in connection with its consulting and business services and the domain name www.myefficenter.com, constitutes unlawful appropriation of Adams Keegan's exclusive rights in and to the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks, and such unauthorized is likely to cause and has caused confusion or mistake and has and will deceive the public into associating Protiviti's phishing services with Adams Keegan.

146.     Protiviti's unauthorized use has caused and is causing damage and irreparable injury to Adams Keegan.

147.     The foregoing acts by Protiviti constitute unfair competition and infringement of Adams Keegan's common law rights for which Adams Keegan has no adequate remedy at law.

## COUNT XIII
## GEORGIA & TENNESSEE COMMON LAW TRADE NAME INFRINGEMENT

148.     Adams Keegan incorporates and realleges the foregoing paragraphs as if fully set forth herein.

149.     Protiviti's wrongful activities set forth herein constitute trade name infringement in violation of Adams Keegan's trade name rights at common law.

150.     Protiviti's acts of infringement have caused Adams Keegan damages, and Adams Keegan seeks judgment for Protiviti's profits made by Protiviti's unauthorized and infringing use of Adams Keegan's trade name, for the damages sustained by Adams Keegan, for all costs necessary to remediate the infringing uses and their effects, and for the costs incurred in bringing the present action.

M AB1 2779051 v2
2911988-000022 05/23/2016

## COUNT XIV
## UNLAWFUL USE OF A COUNTERFEIT ADAMS KEEGAN MARK

151.     Adams Keegan incorporates and realleges the foregoing paragraphs as if fully set forth herein.

152.     Protiviti has used a counterfeit ADAMS KEEGAN (and Design) mark in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1116, & 1127.  Protiviti has used the ADAMS KEEGAN (and Design) counterfeit mark in connection with providing Protiviti's services, as well as part of its phishing scheme. The mark used by Protiviti is identical to the federally registered ADAMS KEEGAN (and Design) trademark.  The mark was used in commerce by Protiviti in the same way as it is used by Adams Keegan.  Protiviti's use of this counterfeit mark is and has been without authorization, and such use is likely to cause confusion in the marketplace and, as discussed above, has caused actual confusion.

153.     As a direct and proximate result of Protiviti's unlawful acts, Adams Keegan has suffered significant harm.

154.     The acts described herein have resulted in great and irreparable damage to Adams Keegan.

155.     Protiviti's acts are and were intentional, knowing, willful, and/or made with reckless disregard for the trademark rights of Adams Keegan, thus entitling Adams Keegan to certain remedies pursuant to the Lanham Act, including but not limited to temporary, preliminary, and permanent injunctions, destruction of any goods or tangible items bearing the counterfeit ADAMS KEEGAN (and Design) mark, compensatory damages, ill-gotten gains and profits, attorneys' fees and expenses, costs, pre- and post-judgment interest, statutory damages, and other equitable relief.

## COUNT XV
## UNLAWFUL USE OF A COUNTERFEIT EFFICENTER MARK

156.    Adams Keegan incorporates and realleges the foregoing paragraphs as if fully set forth herein.

157.    Protiviti has used a counterfeit EFFICENTER (and Design) mark in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1116, & 1127.  Protiviti has used the EFFICENTER (and Design) counterfeit mark in connection with providing Protiviti's services, as well as part of its phishing scheme.   The mark used by Protiviti is identical to the federally registered EFFICENTER (and Design) trademark.  The mark was used in commerce by Protiviti in the same way as it is used by Adams Keegan.  Protiviti's use of this counterfeit mark is and has been without authorization, and such use is likely to cause confusion in the marketplace and, as discussed above, has caused actual confusion.

158.    As a direct and proximate result of Protiviti's unlawful acts, Adams Keegan has suffered significant harm.

159.    The acts described herein have resulted in great and irreparable damage to Adams Keegan.

160.    Protiviti's acts are and were intentional, knowing, willful, and/or made with reckless disregard for the trademark rights of Adams Keegan, thus entitling Adams Keegan to certain remedies pursuant to the Lanham Act, including but not limited to temporary, preliminary, and permanent injunctions, destruction of any goods or tangible items bearing the counterfeit EFFICENTER (and Design) mark, compensatory damages, ill-gotten gains and profits, attorneys' fees and expenses, costs, pre- and post-judgment interest, statutory damages, and other equitable relief.

**COUNT XVI**
**COPYRIGHT INFRINGEMENT OF THE WORKS SUBJECT TO**
**COPYRIGHT REGISTRATION NOS. TX 8-155-011 AND TX 8-154-370**

161.    Adams Keegan incorporates and realleges the foregoing paragraphs as if fully set forth herein.

162.    The infringing HTML code for Protiviti's fake myefficenter.com website is identical to Adams Keegan's work which is the subject of Copyright Registration No. TX 8-155-011.

163.    Additionally, the infringing HTML code for Protiviti's fake myefficenter.com website is essentially identical to the HTML code which is the subject of Copyright Registration No. TX 8-154-370.

164.    Protiviti had access to the HTML code for Adams Keegan's Efficenter® login page through Adams Keegan's Efficenter® website located at domain name efficenter.com and domain name www.adamskeegan.com/efficenter, which, upon information and belief, Protiviti downloaded directly from Adams Keegan's Efficenter® website.

165.    By downloading, copying, reproducing, distributing, and/or publicly displaying the infringing HTML code without Adams Keegan's permission or other authorization, Protiviti has infringed and will continue to infringe Adams Keegan's copyright interests in and to the HTML code for Adams Keegan's Efficenter® login page.

166.    The aforementioned acts by Protiviti have damaged, and if not enjoined, will continue to damage Adams Keegan and cause it irreparable harm, for which Adams Keegan has no adequate remedy at law.

167.    Therefore, Protiviti's acts are and were intentional, knowing, willful, and/or made with reckless disregard for the copyright interests of Adams Keegan, thus entitling Adams

31

Keegan to certain remedies pursuant to the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, including but not limited to temporary, preliminary, and permanent injunctions; destruction of any copies of the infringing HTML code for Protiviti's fake myefficenter.com website; Adams Keegan's damages; Protiviti's profits; attorneys' fees and expenses; costs; pre-judgment interest; post-judgment interest; and other equitable relief.

## COUNT XVII
## VIOLATION OF THE ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT

168.     Adams Keegan incorporates and realleges the foregoing paragraphs as if fully set forth herein.

169.     The domain name myefficenter.com is confusingly similar to the EFFICENTER (and Design) Trademark and to Adams Keegan's web portal for its Efficenter® system, located at domain name efficenter.com and domain name www.adamskeegan.com/efficenter.

170.     Protiviti registered and used the myefficenter.com domain name with the bad faith intent of causing harm to Adams Keegan and its brands by using the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks.

171.     Protiviti registered and used the fake myefficenter.com website with the intent to divert consumers from Adams Keegan's online location to the fake myefficenter.com website with the bad faith intent to harm Adams Keegan's goodwill by creating a likelihood of confusion as to source, sponsorship, affiliation, or endorsement of Protiviti's fake myefficenter.com website and the bad faith intent to profit from its consulting and phishing services, including holding itself out as Adams Keegan and offering the same services as Adams Keegan.

172.     Protiviti's actions constitute cyber-piracy in violation of 15 U.S.C. § 1125(d).

173.     Protiviti's fake myefficenter.com website has caused and unless enjoined, will continue to cause, irreparable injury to Adams Keegan and to the goodwill associated with the

32

ADAMS KEEGAN Trademarks, EFFICENTER Trademarks, and Adams Keegan's web portal for its Efficenter® system, located at domain name efficenter.com and domain name www.adamskeegan.com/efficenter.

174.    Because Protiviti's infringing conduct has caused and is likely to cause substantial injury to the public and to Adams Keegan, Adams Keegan is entitled to injunctive relief, and to recover either statutory damages under 15 U.S.C. § 1117(d) or Protiviti's trebled profits, together with Adams Keegan's costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

### COUNT XVIII
### UNJUST ENRICHMENT

175.    Adams Keegan incorporates and realleges the foregoing paragraphs as if fully set forth herein.

176.    Protiviti has improperly received a benefit by using in Georgia and Tennessee the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks in connection with Protiviti's consulting and business services and profited from providing its services to its clients even though it was not entitled to receive this benefit.

177.    Protiviti was aware of the benefit of its use in Georgia and Tennessee of the ADAMS KEEGAN and EFFICENTER Trademarks in connection with Protiviti's consulting and business services as Protiviti needed a recognizable trademark in order of its Phishing Email scheme to be successful.

178.    At no point has there ever been an existing, enforceable contract between Adams Keegan and Protiviti conferring on Protiviti the benefit of using in Georgia or Tennessee of the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks.

179.    Protiviti's admission that it failed to obtain Adams Keegan's authorization to use the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks indicates that Protiviti

should have reasonably understood it should have first sought permission from Adams Keegan and that Adams Keegan would have been fairly compensated for the benefits Protiviti received in its for-profit business.

180. It is inequitable for Protiviti to retain the benefits it received.

181. Through the actions described herein, Protiviti has been unjustly enriched.

## V.     PRAYER FOR RELIEF

WHEREFORE, Adams Keegan requests a judgment as follows:

1. That Protiviti, its officers, agents, servants, employees and attorneys, and those persons in active concert or participation with Protiviti, including CG Silvers LLC, be preliminary and permanently enjoined and restrained:

    a.     from using the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks, or any other designations or trademarks likely to cause confusion with Adams Keegan's ADAMS KEEGAN Trademarks and EFFICENTER Trademarks for consulting services or any other business services;

    b.     from otherwise infringing upon Adams Keegan's rights in and to the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks and from otherwise unfairly competing with Adams Keegan in any manner whatsoever;

    c.     from producing, advertising, promoting, offering for sale and selling consulting or business services or related products or services under the ADAMS KEEGAN

34

Trademarks and EFFICENTER Trademarks or any other designation likely to cause confusion with the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks; and

d.    from copying, reproducing, distributing, advertising, promoting, or displaying the HTML code for Adams Keegan's Efficenter® login page.

2.    That Protiviti, its officers, agents, servants, employees and attorneys, and those persons in active concert or participation with Protiviti, including CG Silvers LLC, be ordered to deliver up for destruction its documents, signs, forms, advertisements, business cards, labels, letterheads and other representations and means for reproducing the same or any printed material bearing the ADAMS KEEGAN Trademarks, EFFICENTER Trademarks, or any designation or mark likely to cause confusion with the ADAMS KEEGAN Trademarks or EFFICENTER Trademarks being used in connection with Protiviti's consulting or business services or any other related products or services, and to obliterate, destroy or remove all other uses or marks likely to cause confusion with the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks.

3.    That Protiviti, its officers, directors, agents, partners, employees and related companies, and all persons acting in concert with them, including CG Silvers LLC, be ordered to destroy all materials or articles infringing Adams Keegan's copyrights in the HTML code for Adams Keegan's Efficenter® login page.

4.    That Protiviti be directed to file with the Court and serve on Adams Keegan, no later than thirty (30) days after the issuance of an injunction, a report in writing under oath setting forth in detail the manner and form in which Protiviti has complied with the injunction.

M AB1 2779051 v2
2911988-000022 05/23/2016

5.     That the Court adjudge and decree that Protiviti's infringing use of the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks is in violation of 15 U.S.C. § 1114, serves to designate falsely the origin of Protiviti's services, and constitutes unfair competition in violation of 15 U.S.C. § 1125.

6.     That the Court adjudge and decree that any use by Protiviti of the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks in conjunction with Protiviti's consulting or business services or any other related products or services, will inevitably cause confusion or mistake or deceive the consuming public into believing that there exists an affiliation, connection, or association between Protiviti and Adams Keegan as to the origin, sponsorship, or approval of Protiviti's products and would constitute false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act of 1946, as amended, 15 U.S.C. § 1125, Georgia law, or Tennessee law.

7.     That the Court adjudge and decree that a likelihood of confusion exists between the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks and Protiviti's infringing marks.

8.     That the Court require a full and complete accounting of all monies received by Protiviti as a result of the wrongful conduct, together with an order transferring to Adams Keegan any amounts found to be due to Protiviti.

9.     That the Court adjudge and decree that  Protiviti has infringed upon Adams Keegan's copyrights in the HTML code for Adams Keegan's Efficenter® login page.

10.    That Adams Keegan be awarded Protiviti's profits or Adams Keegan's damages from lost sales after an accounting, and that such award be increased as permitted, including

being trebled as provided under 15 U.S.C. § 1117, Tenn. Code Ann. § 47-18-109, or Tenn. Code Ann. § 47-25-513(b) or increased under O.G.C.A. § 23-2-55 or O.G.C.A. § 10-1-399.

11. That Adams Keegan be awarded statutory damages of $2,000,000.00 per registered mark, pursuant to 15 U.S.C. § 1117(c) for each instance of Protiviti's use of the counterfeit ADAMS KEEGAN Trademarks and/or counterfeit EFFICENTER Trademarks.

12. That Adams Keegan be awarded its actual damages incurred as a result of Protiviti's acts of copyright infringement, and all profits Protiviti realized as a result of its acts of copyright infringement, in amounts to be determined at trial.

13. That Adams Keegan has and recover its costs and attorneys' fees from Protiviti, including as provided by 15 U.S.C. § 1117, 17 U.S.C. § 505, Tenn. Code Ann. § 47-18-109, Tenn. Code Ann. § 47-25-514(a), O.G.C.A. § 10-1-373(b), and  O.G.C.A. § 10-1-399.

14. That the Court award interest on all monies found to be due to Adams Keegan from Protiviti, at the then prevailing or legal rate, whichever is greater, from the date said amounts or any part thereof became or become due.

15. That Protiviti direct its employee Chris Silvers and the limited liability company CG Silvers LLC to assign all rights, title, and interest to the fake myefficenter.com website, including any rights, title, and interest to the domain name myefficenter.com to Adams Keegan.

16. That the Court require Protiviti to notify its customers, clients, and associates of said Court Order.

17. That Adams Keegan be awarded such other and further relief as this Court may deem just and proper.

## VI.      JURY DEMAND

Adams Keegan hereby demands a trial by jury for all issues so triable.

Dated: May 23, 2016

Respectfully submitted,

s/ Adam S. Baldridge_____
Adam S. Baldridge (TN Bar No. 23488)
Nicholas L. Vescovo (TN Bar No. 30387)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
Tele: (901) 577-2102
Fax:  (901) 577-0838
165 Madison Avenue
2000 First Tennessee Building
Memphis, Tennessee 38103

*Attorneys for Plaintiff Adams Keegan, Inc.*

M AB1 2779051 v2
2911988-000022 05/23/2016