# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| **ADAMS KEEGAN, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 2:16-cv-02152-SHM-cgc** |
| | ) | |
| | ) | <u>**JURY DEMANDED**</u> |
| **PROTIVITI, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## [REDACTED] PLAINTIFF ADAMS KEEGAN, INC.'S OPPOSITION TO DEFENDANT PROTIVITI, INC.'S MOTION TO DISMISS UNDER RULE 12(b)(7)

## <u>TABLE OF CONTENTS</u>

I.            INTRODUCTION................................................................................1

II.          FACTUAL & PROCEDURAL BACKGROUND ..................................2

     A.      Protiviti's Unlawful Phishing Email Scheme and Fake Myefficenter.com Website...................................................2

     B.      Protiviti Admits that Protiviti, not Silvers, Is at Fault for the Fake Myefficenter.com Website and Phishing Email Scheme. ......................3

     C.      Protiviti's Contract with Silvers Further Demonstrates the Motion Should be Denied...........................................6

III.        LAW & ARGUMENT ........................................................................7

     A.      Pursuant to Rule 12(g)(2), Protiviti Waived the Right to Seek Dismissal Based on Rule 12(b)(7) and Rule 19(a). ..................7

     B.      Notwithstanding Protiviti's Procedural Deficiencies, the Court Should Deny Protiviti's Motion Because Silvers is Not a Required or Indispensable Party. ......................................................9

          1.      The Heavy Burden Applicable to Rule 12(b)(7) Motions.........10

          2.      The Two Tests as to a Required Party Under Rule 19(a). .......11

               a.      Silvers Is Not a Required Party Because the Court Can Accord Complete Relief to the Existing Parties Without Silvers's Presence...........................................11

               b.      Silvers Is Not A Required Party Under The Second Rule 19 Test. .........................................14

                   (1)     Silvers Has Not Claimed An Interest To The Subject Matter.......................................14

                   (2)     Protiviti Can Adequately Protect Any Interest of Silvers and the Parties Will Not Be Subject To Inconsistent Obligations. ...................15

          3.      Even if Silvers Were A Required Party, Silvers Is Not An Indispensable Party. ..................................17

     C.      If Silvers Were a Necessary Party, the Court May Easily Join Silvers Because the Agreement Relied Upon by Protiviti Demonstrates Jurisdiction and Venue Are Proper in This Court. ..............18

     D.      In the Alternative, Adams Keegan Respectfully Requests the Court Exercise Its Discretion and Restructure the Relief Requested by Adams Keegan to Avoid the Harsh Result of Dismissal......................20

IV.        CONCLUSION ................................................................................20

ii

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*3M Co. v. Mohan*,
No. CIV. 09-1413 ADM/FLN, 2010 WL 5095676 (D. Minn. Nov. 24, 2010) ......................17

*Alexander v. Chapnick*,
No. 05-1300-T-AN, 2006 WL 448698 (W.D. Tenn. Feb. 18, 2006)......................................11

*Atlanta Int'l Ins. Co. v. Conwood, Co., L.P.*,
No. CIV. 94-2679-H/A, 1995 WL 861621 (W.D. Tenn. Mar. 30, 1995)...............................11

*Bacardi Int'l Ltd. v. V. Suarez & Co.*,
719 F.3d 1 (1st Cir. 2013)....................................................................................................17

*Bedel v. Thompson*,
103 F.R.D. 78 (S.D. Ohio 1984) ..........................................................................................16

*Bray v. Tennessee Valley Auth.*,
742 F. Supp. 2d 911 (W.D. Tenn. 2010)...............................................................................12

*Broadnax v. Swift Transp. Co.*,
694 F. Supp. 2d 947 (W.D. Tenn. 2010)...............................................................................11

*Brown v. Packaging Corp. of Am.*,
No. 00-1049, 2001 WL 34395593 (W.D. Tenn. Apr. 13, 2001) ..............................................3

*Century Bus. Servs. v. Bryant*,
69 Fed. App'x. 306 (6th Cir. 2003) .......................................................................................14

*CJ Advert., LLC v. Whitehardt, Inc.*,
No. 3:10-0214, 2010 WL 3260068 (M.D. Tenn. Aug. 18, 2010)...........................................19

*Dumann Realty, LLC v. Faust*,
267 F.R.D. 101 (S.D.N.Y. 2010) ............................................................................................3

*Ecimos, LLC v. Carrier Corp.*,
No. 2:15-CV-2726-JPM-CGC, 2016 WL 2587290 (W.D. Tenn. May 4, 2016)....................11

*Elec. Energy, Inc. v. Lambert*,
No. 10-2629-STA-TMP, 2010 WL 4975550 (W.D. Tenn. Dec. 2, 2010).......................11, 15

*English v. Dyke*,
23 F.3d 1086 (6th Cir. 1994) ..................................................................................................8

iii

*EP Operating Ltd. P'ship v. Placid Oil Co.,*
  No. CIV.A.93-0257, 1994 WL 507455 (E.D. La. Sept. 14, 1994) .......................................8, 9

*Glancy v. Taubman Centers, Inc.,*
  373 F.3d 656 (6th Cir. 2004) .................................................................................................10

*Glassman, Edwards, Wade & Wyatt, P.C. v. Wolf, Haldenstein Adler Freeman & Herz, LLP,*
  601 F. Supp. 2d 991 (W.D. Tenn. 2009)..........................................................................11, 18

*Harvill v. Harvill,*
  No. 3:12-CV-00807, 2013 WL 1245729 (M.D. Tenn. Mar. 27, 2013) ..................................14

*Hooper v. Wolfe,*
  396 F.3d 744 (6th Cir. 2005) .................................................................................................17

*Jota v. Texaco Inc.,*
  157 F.3d 153 (2d Cir. 1998)....................................................................................................20

*Keweenaw Bay Indian Community v. State,*
  11 F.3d 1341 (6th Cir. 1993) .................................................................................................10

*Limbright v. Hofmeister,*
  No. CIVA5:09-CV-107KSF, 2010 WL 1740905 (E.D. Ky. Apr. 27, 2010)............................9

*Mark Six Realty Assocs., Inc. v. Drake,*
  463 S.E. 2d 917 (1995) ...........................................................................................................12

*Marshall v. Navistar Intern. Transp. Corp.,*
  168 F.R.D. 606 (E.D. Mich. 1996) ........................................................................................10

*N. Dixie Theatre, Inc. v. McCullion,*
  613 F. Supp. 1339 (S.D. Ohio 1985) .......................................................................................8

*Orange Peach Line, Inc. v. Country Explosion, LLC,*
  No. 3:14-CV-1608, 2015 WL 222311 (M.D. Tenn. Jan. 14, 2015) .................................12, 13

*Rauch v. Day and Night Manufacturing Corp.,*
  576 F.2d 697 (6th Cir. 1978) ...................................................................................................8

*RDK Corp. v. Larsen Bakery, Inc.,*
  No. 02-C-0675, 2006 WL 2168797 (E.D. Wis. July 31, 2006)..............................................13

*Republic of Philippines v. Pimentel,*
  553 U.S. 851 (2008)................................................................................................................18

*Rowley v. McMillan,*
  502 F.2d 1326 (4th Cir. 1974) .................................................................................................9

iv

*Sch. Dist. of City of Pontiac v. Sec'y of the United States Dep't of Educ.*,
    584 F.3d 253 (6th Cir. 2009) ........................................................................ passim

*Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.*,
    181 F.3d 759 (6th Cir. 1999) ................................................................................12

*Teksystems, Inc. ex rel. Maxim Grp., Inc. v. Farr*,
    No. M200801909COAR3CV, 2009 WL 1312835 (Tenn. Ct. App. May 11, 2009) ..............12

*Tiernan v. Dunn*,
    295 F. Supp. 1253 (D.R.I. 1969)............................................................................9

*Vermeer Heartland of Tenn., LLC v. Earth Tool Co., LLC*,
    2011 U.S. Dist. LEXIS 25897 (M.D. Tenn. Mar. 14, 2011) ..................................16

*Watson ex rel. Estate of Simon v. Herenton*,
    No. 04-2400B, 2005 WL 2177002 (W.D. Tenn. Sept. 8, 2005)........................10, 11

*Williams-Sonoma Direct, Inc. v. Arhaus, LLC*,
    304 F.R.D. 520 (W.D. Tenn. 2015) ..................................................................11, 16

*Wright v. Linebarger Googan Blair & Sampson, LLP*,
    782 F. Supp. 2d 593 (W.D. Tenn. 2011)................................................................11

*WW, LLC v. Coffee Beanery, Ltd.*,
    No. CIV.A. WMN-05-3360, 2012 WL 3728184 (D. Md. Aug. 27, 2012)................................9

## Statutes

28 U.S.C. § 1391................................................................................................19

## Other Authorities

7 Wright, Miller & Kane, Federal Practice and Procedure § 1609 (3d ed. 2001) ........................10

Federal Rule of Civil Procedure 12  .................................................................. passim

Federal Rule of Civil Procedure 19  .................................................................. passim

Federal Rule of Civil Procedure 65 ........................................................................7

Federal Rule of Evidence 801........................................................................................3

Plaintiff Adams Keegan, Inc. ("Adams Keegan"), by and through counsel and in opposition to Defendant Protiviti, Inc.'s ("Protiviti") Motion To Dismiss Under Rule 12(b)(7) (Doc. 17), states as follows:

## I.    INTRODUCTION

While Protiviti's motion is legally deficient and factually inaccurate as discussed below, the Court should deny the motion as procedurally deficient pursuant to Federal Rule of Civil Procedure 12(g)(2) due to Protiviti's failure to include its Rule 19(a) argument in its May 6, 2016 Motion to Dismiss and For a More Definite Statement (Doc. 12).  Protiviti was plainly aware of its Rule 19(a) arguments prior to Adams Keegan filing its First Amended Complaint ("Amended Complaint") (Doc. 13), and the filing of an Amended Complaint does not revive the right to interpose defenses which could have been made to the original complaint.

Even if Protiviti's Rule 19(a) argument had been asserted in accordance with Rule 12, Protiviti's motion is based entirely on erroneous factual and legal arguments, namely that nonparty CG Silvers Consulting LLC ("Silvers"), an agent of Protiviti, is a required party under Federal Rule of Civil Procedure 19(a) because, while Adams Keegan's First Amended Complaint ("Amended Complaint") (Doc. 13) seeks damages and injunctive relief against Protiviti, it also includes a sentence of requested relief directed at Protiviti's agent, Silvers.  This argument ignores the substance of Adams Keegan's claims and also directly contradicts the statements of Protiviti's Associate Director Chris Manning as to Silvers's employment relationship with Protiviti, as discussed in detail below.  Even more, Protiviti's motion ignores the facts and the Rule 19 case law which clearly demonstrate Silvers is neither a required nor indispensable party because: (a) complete relief can be afforded to the currently named parties; (b) Silvers has not affirmatively claimed any interest in this suit; (c) Protiviti can protect any

interest that Silvers may claim because Protiviti's and Silvers's interests are aligned; and (d) there is no substantial risk of inconsistent obligations, as Protiviti has only articulated a concern about hypothetical inconsistent adjudications, which is not the test under Rule 19. Accordingly, the Court should deny Protiviti's motion as a matter of law.

## II.    FACTUAL & PROCEDURAL BACKGROUND

**A.    Protiviti's Unlawful Phishing Email Scheme and Fake Myefficenter.com Website.**

The events that are the subject of Adams Keegan's First Amended Complaint stem from a phishing email scheme designed and orchestrated by Protiviti through Protiviti Associate Director and Project Manager Chris Manning ("Manning"). The facts regarding the incident are set forth in detail in Adams Keegan's First Amended Complaint and are recited briefly herein for ease of reference.

Protiviti and Adams Keegan share a mutual client, which engaged Protiviti to conduct an audit of the client's security compliance and data privacy and to perform an internal audit testing of the client's vulnerability to cybercrime. Am. Compl. ¶ 26. Protiviti planned an audit based upon penetration testing and social engineering, as designed by Manning and Silvers. *Id.* ¶ 27.

To perform its penetration test, Protiviti created a "phishing" email scheme in order to identify if the client's employees would click on a link that they should not click. *Id.* ¶ 28. In designing this test, Protiviti used a phishing email scheme by "mirroring" Adams Keegan's Efficenter website. *Id.* at ¶ 29. To execute this phishing email scheme, Manning and Silvers, at the direction of Manning, created and registered the fake myefficenter.com website located at domain name www.myefficenter.com, which included unauthorized use of the ADAMS KEEGAN Trademarks and the EFFICENTER Trademarks. *See* Am. Comp. ¶ 30. The fake myefficenter.com website also intentionally copied and infringed Adams Keegan's copyrights by

2

the wholesale copying of the entirety of Adams Keegan's HTML code for its login page for its Efficenter web-based system and published the HTML code on the fake myefficenter.com website.  *Id.*¶ 47.  The fake myefficenter.com website also copied and linked to certain images from the Efficenter® website.  *Id.* ¶ 46.

On or about November 24, 2015, Protiviti, through its employees Manning and Silvers, distributed a phishing email directing recipients to click on a link to myefficenter.com in order to earn a free iPad.  Am. Compl. ¶ 35.  Like its fake myefficenter.com website, Protiviti's phishing email utilized the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks without Adams Keegan's authorization, permission, or consent.  *Id.* ¶ 36.  Protiviti's email was sent from the fake email address admin@myefficenter.com, indicated the title of the sender as "Adams Keegan Administrator," and included the subject line of "Try the new Efficenter, Win an iPad Pro!"  *Id.* The body of the phishing email stated "the new Efficenter" and directed recipients to click on an embedded link to "myefficenter.com" to win an "iPad Pro"  and featured the ADAMS KEEGAN Trademarks and EFFICENTER Trademarks.

**B.      Protiviti Admits that Protiviti, not Silvers, Is at Fault for the Fake Myefficenter.com Website and Phishing Email Scheme.**

On November 25, 2015, the day after the event that is the subject of this lawsuit, Manning had a phone conversation with Adams Keegan Chief Information Officer Bob Frank ("Frank") that Frank recorded.  *See* Declaration of Bob Frank ("Frank Decl.") ¶¶ 3-4, attached as **Exhibit 1**.  Attached to Frank's Declaration is a true and correct transcription of the call between Manning and Frank.[1]  *Id.*  During that call, Manning admitted that the phishing email scheme

---

[1] Manning's admission falls within a hearsay exception as a statement offered against an opposing party that was made by the party's employee on a matter within the scope of the employment relationship while it existed.  *See* Fed. R. Evid. 801(d)(2)(D); *see also Brown v. Packaging Corp. of Am.*, No. 00-1049, 2001 WL 34395593, at *4 (W.D. Tenn. Apr. 13, 2001) (applying Federal Rule of Evidence 801(d)(2)(D)).  Further, courts may consider evidence beyond the pleadings when evaluating a Rule 12(b)(7) motion.  *Dumann Realty, LLC v. Faust*, 267 F.R.D.

was orchestrated and executed by Protiviti:

> CHRIS MANNING:          Yep. Yeah, so Protiviti does a number of things, but the division that I work for is specifically focused on security compliance and data privacy so -- so the statement of work and the project that we were executing for Patsy included a number of things: penetration testing as well as social engineering from a physical, telephone, and email perspective.
>
> And the email scheme that we had utilized in order to, you know, to identify if users would basically click on a link, you know, that they shouldn't, you know, obviously, had you guys implicated from a -- from a Efficenter perspective.

*See* Ex. A to Frank Decl., Transcript of Call between Frank and Manning ("Call Tr.") at 4:1-15.

Importantly for the present motion, Manning acknowledged Silvers was employed by Protiviti:

> BOB FRANK:          Right. Yeah, I mean, I saw those emails.  But so the -- who's Chris, then?
>
> CHRIS MANNING:          So Chris Silvers is our pen tester.   He's actually the guy that's doing the work; I'm sort of the project manager.
>
> BOB FRANK:          And does he work for the same company as y'all -- as you?
>
> CHRIS MANNING:          **He does. He does. He works for Protiviti**.

*See* Call Tr. at 4:16-24 (emphasis added).  Manning further admitted that Protiviti, not Silvers,

failed to obtain Adams Keegan's consent to use its ADAMS KEEGAN and EFFICENTER

Trademarks and/or Adams Keegan's copyrighted HTML code:

> BOB FRANK:          -- to actually take it to the next level of finding out more than the click-through, using our site, I'm just curious why -- why y'all wouldn't let us know up front.
>
> CHRIS MANNING:          Yeah, that's a good -- that's a good point, Bob. **And I think that's something that was just an oversight on my part**. You know, we should have -- a lot of times when we run these types of expeditions, we do, like, a -- typically, we utilize like web mail, right, so if a company has like an Outlook web mail site, we typically use that. . . . we chose to kind of mirror what you guys have from a site perspective.  **And you're absolutely right. We -- what we should have done is contact you guys, first and foremost, and let you know that that was happening and ask your permission for that, and that was an oversight on my part**.

---

101, 101 n.1 (S.D.N.Y. 2010) ("[W]hen reviewing a motion to dismiss under Rule 12(b)(7), the court may consider documents and facts outside the pleadings").

Call Tr. at 5:5-6:8 (emphasis added).  Later, during the call, Manning again admitted that Protiviti alone failed to obtain Adams Keegan's consent to use Adams Keegan's ADAMS KEEGAN and EFFICENTER Trademarks and Adams Keegan's copyrighted HTML code and clearly omits any action or inaction by Silver:

> CHRIS MANNING: Yeah, Bob, I -- you know, I mean, apart from apologizing I'm not -- I'm not quite sure what else -- you know, I'm embarrassed, right. I think it's -- **I think it's an oversight on our part**.
> **I think we -- you know, we should have gone either with another route in terms of assisting [the client] with the phishing campaign or, you know, certainly contacting you guys, you know, at the very least, and we didn't do that so, you know, so -- so that's my fault**.

Call Tr. at 9:14-24 (emphasis added).  Lastly, during the call, Manning admits that Protiviti's "managing director who's the global lead for this type of stuff is aware" of Protiviti's failure while making no mention of Silvers:

> BOB FRANK:       So how far up the chain have you brought this within your company?
> CHRIS MANNING:        Yeah, so -- so my managing director is aware who's kind of -- we're not -- we don't have a partnership style so we have managing directors, and the managing director who's the global lead for this type of stuff is aware.  He's the managing director on the project. His name is Michael Walter.  So, you know, yeah, he's in the loop as well. He's traveling today so -- which is kind of why I'm handling a lot of it.

Call Tr. 13:13-14:1.  Undeniably, Silvers is either an employee or agent of Protiviti but regardless Protiviti is the entity that is responsible for orchestrating the event that resulted in this lawsuit.

Incredibly, in the face of Adams Keegan's claims, Protiviti contends "[t]he allegations in Adams Keegan's Complaint are related to Silvers, not Protiviti."  Mot. at 4.  This is belied by Protiviti's first Motion to Dismiss and For a More Definite Statement filed on May 6, 2016 (the "May 6th Motion") (Doc. 12).  In its May 6th Motion, Protiviti states, "**Protiviti** implemented [penetration testing and social engineering] by creating a simulated email phishing scheme

5

directed only to [the parties' mutual client's] employees."  May 6th Motion at 2 (emphasis

added).  Protiviti also admits that it controlled the fake myefficenter.com website, "Protiviti did

not profit off of the alleged use of Adams Keegan's HTML code or exploit Adams Keegan in

any way.  Not only was Protiviti's alleged use non-commercial, **Protiviti used its website** [i.e.,

the fake myefficenter.com website] for cybersecurity purposes."   May 6th Motion at 17

(emphasis added).   Absent from Protiviti's first Rule 12(b) motion is any reference to any

responsibility of Silvers.

**C.     Protiviti's Contract with Silvers Further Demonstrates the Motion Should be
         Denied.**

        In support of its motion, Protiviti relies upon its Subcontractor Services Agreement (Doc.

18) with Silvers.  Several provisions of that agreement, however, demonstrate that Silvers is not

a necessary party.  For example, the Subcontractor Services Agreement states that █████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

*See* Subcontractor Services Agreement ¶ 4(b).  Likewise, Chris Silvers, individually, also entered

into a Personnel Agreement with Protiviti (attached to the Subcontractor Services Agreement as

Exhibit B) where he individually agreed to ████████████████████████████████████

████████████████████████   *See* Personnel Agreement ¶ 2(b), attached to Subcontractor

Services Agreement as Exhibit B.   Thus, Silvers does not ████████████████████████

████████   Accordingly, in the event the Court orders that Protiviti effectuate the transfer of the

fake myefficenter.com website to Adams Keegan and/or the destruction of materials displaying

6

the ADAMS KEEGAN and EFFICENTER Trademarks or Adams Keegan's copyrighted HTML code, Protiviti can accomplish this as Silvers ███████████████████████

Furthermore, the agreement relied upon by Protiviti makes clear that, even if Silvers was a necessary party, the Court can easily order that Silvers be joined, as Silvers is subject to, at a minimum, specific jurisdiction and venue in the Tennessee.  Specifically, the very agreement Protiviti implicates in its motion states that ███████████████████████████ ███████████████████████ *See* Ex. A to Motion to Dismiss, Work Schedule (emphasis added), attached as Exhibit A to Subcontractor Services Agreement.

On May 23, 2016, Adams Keegan filed its First Amended Complaint (Doc. 13) as a matter of right pursuant to Rule 15(a).  While Adams Keegan's First Amended Complaint references Silvers several times, Adams Keegan seeks relief only as to Protiviti and its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with Protiviti.  *See generally* Am. Compl., Prayer for Relief ¶¶ 1-3, 15.  Silvers is clearly an employee and/or agent of Protiviti and acting in concert with Protiviti; thus, the Court can enjoin Protiviti, which includes Protiviti's employees, agents, and those acting in concert with Protiviti. *See* Fed. R. Civ. P. 65.

### III.  LAW & ARGUMENT

**A.  Pursuant to Rule 12(g)(2), Protiviti Waived the Right to Seek Dismissal Based on Rule 12(b)(7) and Rule 19(a).**

Protiviti waived its right to seek dismissal of this lawsuit based on the joinder of Silvers under Rule 19(a) because Protiviti failed to raise the issue when it filed its May 6th Motion to Dismiss.  Rule 12(g)(2) provides that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."  Fed. R. Civ. P.

12(g)(2).  "[I]f a party makes a Rule 12(b) motion, and does not include an additional defense or objection that could have been joined pursuant to Rule 12(g), that defense or objection is waived unless it is protected by Rule 12(h)(2)."  *EP Operating Ltd. P'ship v. Placid Oil Co.*, No. CIV.A.93-0257, 1994 WL 507455, at *2 (E.D. La. Sept. 14, 1994) (denying  defendant's  Rule 12(b)(7) motion pursuant to Rule 12(g) in light of defendant's failure to assert its Rule 12(b)(7) argument in its earlier filed Rule 12(b)(1) motion).   Here, the Rule 12(h) exceptions are inapplicable,[2] as "[t]he ban against successive pre-answer motions extends to the three 'substantial defenses' listed in Rule 12(h)(2) . . . [including] failure to join a party indispensable under Rule 19 (Rule 12(b)(7))," if the defenses are not properly asserted.  *EP Operating Ltd.*, 1994 WL 507455, at *2 (quoting 5a Wright & Miller, Federal Practice and Procedure, § 1385); *see also N. Dixie Theatre, Inc. v. McCullion*, 613 F. Supp. 1339, 1346 (S.D. Ohio 1985) ("Although Rule 12(h)(2) preserves an indispensable party objection, this provision does not apply to persons who are merely necessary parties under Rule 19(a).") (citing 7 Wright & Miller, Federal Practice and Procedure, § 1609).   Therefore, Protiviti is foreclosed from seeking dismissal of the lawsuit based on the absence of a purportedly required party.

The Sixth Circuit describes the purpose of Rule 12(g)(2) as "prevent[ing] . . . dilatory motion practice."  *Rauch v. Day and Night Manufacturing Corp.*, 576 F.2d 697, 701, n. 3 (6th Cir. 1978) (citing 5 Wright & Miller, Federal Practice and Procedure, § 1384); *see also English v. Dyke*, 23 F.3d 1086 (6th Cir. 1994) ("[A] failure to assert the defense in a pre-answer motion to dismiss waives the right to raise the issue in a second pre-answer motion to dismiss.").  "It is the role of the Court to apply the Rules to ensure the just, speedy, and efficient resolution of

---

[2]  Rule 12(h)(2) states that "[f]ailure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to a claim may be raised . . . (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial."  Fed. R. Civ. P. 12(h)(2).  Rule 12(h)(3) sets forth that lack of subject-matter jurisdiction may be raised at any time.  Fed. R. Civ. P. 12(h)(3).  Protiviti's motion is based on Rule 19(a) and Silvers's purported status as a required party.  *See* Mot. at 1.  Thus, Rule 12(h)(2) is inapplicable.

disputes." *EP Operating Ltd.*, 1994 WL 507455, at *2.  Indeed, "[t]o permit this defense to be raised now would undermine the very purpose of Rule 12(g), (h), which is the avoidance of time-consuming, piece-meal litigation of pre-trial motions." *Tiernan v. Dunn*, 295 F. Supp. 1253, 1256 (D.R.I. 1969).

Further, the fact that Adams Keegan filed an amended pleading has no impact on the application of Rule 12(g) because Protiviti's arguments as to Silvers were available at the time of its May 6th Motion.  "[A]n amendment to the pleadings permits the responding pleader to assert only such of those defenses which may be presented in a motion under Rule 12 as were not available at the time of his response to the initial pleading." *Rowley v. McMillan*, 502 F.2d 1326, 1333 (4th Cir. 1974); *WW, LLC v. Coffee Beanery, Ltd.*, No. CIV.A. WMN-05-3360, 2012 WL 3728184, at *2 (D. Md. Aug. 27, 2012) ("[A]mendment of the complaint ... does not revive the right to interpose defenses or objections which might have been made to the original complaint.") (citations omitted); *see also Limbright v. Hofmeister*, No. CIVA5:09-CV-107KSF, 2010 WL 1740905, at *3 (E.D. Ky. Apr. 27, 2010) (denying defendants' Rule 12(b)(6) motion under Rule 12(g) because the defense  raised was "unquestionably available at the time of the original motion").  Because Protiviti's arguments as to Silvers were available at the time of Protiviti's May 6th Motion and Protiviti failed to assert them, Adams Keegan respectfully submits that the Court should deny the present motion under Rule 12(g)(2).

**B.      Notwithstanding Protiviti's Procedural Deficiencies, the Court Should Deny Protiviti's Motion Because Silvers is Not a Required or Indispensable Party.**

While the Court may deny Protiviti's motion on the procedural grounds set forth above, Protiviti's motion also fails on the merits, as Silvers is neither a required nor an indispensable party.

1.     **The Heavy Burden Applicable to Rule 12(b)(7) Motions.**

Protiviti bears the burden of showing that Silvers is a required or indispensable party under Rule 12(b)(7).  *Watson ex rel. Estate of Simon v. Herenton*, No. 04-2400B, 2005 WL 2177002, *5 (W.D. Tenn. Sept. 8, 2005) ("The movant bears the burden of demonstrating that dismissal under Rule 19 is warranted."); *Marshall v. Navistar Intern. Transp. Corp.*, 168 F.R.D. 606, 611 (E.D. Mich. 1996) (same).  Protiviti cannot meet this burden; each of the Rule 19 tests, as applied in the Sixth Circuit, makes clear that Silvers is not a required party, much less an indispensable one.

The Sixth Circuit has set out a three-part analysis to determine whether a party is required and indispensable under Rule 19.  *Glancy v. Taubman Centers, Inc.*, 373 F.3d 656, 666 (6th Cir. 2004).  First, the court looks to Rule 19(a) to determine if the party is required, which calls for the application of one of two tests.  *Id.*  If the party is required under Rule 19(a), the court must determine whether joining the party would destroy subject matter jurisdiction.  *Id.*  Finally, if joinder would destroy subject matter jurisdiction, the court looks to Rule 19(b) to determine if the party is indispensable and if the court should dismiss the case in "equity and good conscience" if the party cannot be added.  *Id.*  The question whether a party is required is left to the sound discretion of the Court. *Keweenaw Bay Indian Community v. State*, 11 F.3d 1341, 1346 (6th Cir. 1993) ("[W]e review a Rule 19(a) finding that a party is necessary to an action under an abuse of discretion standard.").

"Federal courts are extremely reluctant to grant motions to dismiss based on nonjoinder and, in general, dismissal will be ordered only when the defect cannot be cured and serious prejudice or inefficiency will result."  7 Wright, Miller & Kane, Federal Practice and Procedure § 1609 (3d ed. 2001).  This Court has denied numerous Rule 12(b)(7) motions, as it is a heavy

burden.[3]

## 2.    The Two Tests as to a Required Party Under Rule 19(a).

Under Rule 19(a), a court may find that a party is required by applying either of two tests. The first test asks whether the court can accord complete relief among the existing parties without the presence of the absent party.  Fed. R. Civ. P. 19(a)(1)(A).  The second test asks whether the absent party (i) "claims an interest relating to the subject of the action" and (ii) is so situated that disposing of the action in its absence may either (a) impair or impede the absent party's ability to protect that interest or else (b) may leave an existing party subject to a substantial risk of incurring inconsistent obligations.  Fed. R. Civ. P. 19(a)(1)(B).  Silvers is not a required party under either test because complete relief can be accorded without Silvers, Silvers is not claiming an interest in the litigation, his interest will not be impeded, and there is no risk of Silvers incurring inconsistent obligations.

### a.    Silvers Is Not a Required Party Because the Court Can Accord Complete Relief to the Existing Parties Without Silvers's Presence.

The Court's analysis need not proceed beyond Rule 19(a)'s first step.  Under Rule 19(a), courts do not look beyond the existing parties in the lawsuit to determine whether they can accord complete relief.  *Elec. Energy Inc. v. Lambert*, No. 10–2629–STA–tmp, 2010 WL 4975550, *2 (W.D. Tenn. Dec. 2, 2010) ("Completeness is determined on the basis of those

---

[3] *See Ecimos, LLC v. Carrier Corp.*, No. 2:15-CV-2726-JPM-CGC, 2016 WL 2587290, at *5 (W.D. Tenn. May 4, 2016) (denying defendant's Rule 12(b)(7) motion because joinder of necessary parties was feasible); *Williams-Sonoma Direct, Inc. v. Arhaus, LLC*, 304 F.R.D. 520, 536 (W.D. Tenn. 2015) (denying defendants' Rule 12(b)(7) motion because all necessary parties were joined); *Wright v. Linebarger Googan Blair & Sampson, LLP*, 782 F. Supp. 2d 593, 607 (W.D. Tenn. 2011) (same); *Broadnax v. Swift Transp. Co.*, 694 F. Supp. 2d 947, 956 (W.D. Tenn. 2010) (same); *Elec. Energy, Inc. v. Lambert*, No. 10-2629-STA-TMP, 2010 WL 4975550, at *2 (W.D. Tenn. Dec. 2, 2010) (same); *Glassman, Edwards, Wade & Wyatt, P.C. v. Wolf, Haldenstein Adler Freeman & Herz, LLP*, 601 F. Supp. 2d 991, 999 (W.D. Tenn. 2009) (same); *Alexander v. Chapnick*, No. 05-1300-T-AN, 2006 WL 448698, at *6 (W.D. Tenn. Feb. 18, 2006) (same); *Watson ex rel. Estate of Simon v. Herenton*, No. 04-2400 B, 2005 WL 2177002, at *5 (W.D. Tenn. Sept. 8, 2005) (same); *Atlanta Int'l Ins. Co. v. Conwood, Co., L.P.*, No. CIV. 94-2679-H/A, 1995 WL 861621, at *3 (W.D. Tenn. Mar. 30, 1995) (denying defendant's Rule 12(b)(7) motion because there was insufficient information to make a ruling on the motion).

persons **who are already parties**, and not as between a party and the absent person whose joinder is sought.") (emphasis added) (internal citations omitted).  The Sixth Circuit takes a "pragmatic approach" to Rule 19 cases, under which the absence of particular parties is not cause for dismissing a case, if meaningful relief can be granted to the parties before the court.  *Sch. Dist. of City of Pontiac v. Sec'y of the  United States Dep't of Educ.*, 584 F.3d 253, 265 (6th Cir. 2009) ("Regardless of the presence or absence of [the absent parties] in this case, the declaratory relief this Court can provide is meaningful and complete, and we thus conclude that the [the absent parties] are not required parties under 19(a)(1)(A).").  Thus, the question is whether the Court can afford Adams Keegan the relief it seeks from Protiviti alone.  The answer to that question is yes.

The Court can afford Adams Keegan the complete relief it seeks because Silvers is an agent[4] of Protiviti and certainly for the claims in this lawsuit Silvers is directly controlled by Protiviti.  "In general, in a lawsuit against a principal, the agent is not considered to be a required party for Rule 19 purposes."  *Orange Peach Line, Inc. v. Country Explosion, LLC*, No. 3:14-CV-1608, 2015 WL 222311, at *13 (M.D. Tenn. Jan. 14, 2015); *see also Soberay Mach. & Equip. Co. v. MRF Ltd., Inc. .,* 181 F.3d 759 (6th Cir. 1999).  The Middle District of Tennessee, in *Orange Peach Line*, denied the defendant's Rule 12(b)(7) motion because the purported required

---

[4]  Protiviti's reliance on the Subcontractor Services Agreement for the proposition that Silvers is an independent contractor is unavailing.  The presence of ███████████████ in an agreement is not dispositive of the analysis as "Tennessee courts generally ignore such provisions" and look at the surrounding facts and circumstances to determine the relationship.  *Bray v. Tennessee Valley Auth.*, 742 F. Supp. 2d 911, 914-15 (W.D. Tenn. 2010); *see also Teksystems, Inc. ex rel. Maxim Grp., Inc. v. Farr*, No. M200801909COAR3CV, 2009 WL 1312835, at *5 (Tenn. Ct. App. May 11, 2009) ("The mere placing of terms such as agent or independent contractor in the contract does not make them such in law. . . . [Y]ou look beyond the contract [at] [t]he surrounding facts and circumstances [to] determine the relationship.") (quoting *U.S. v. Boyd*, 363 S.W.2d 193, 200 (Tenn. 1962)).  Similarly, under Georgia law, the inquiry as to an independent contractor looks not only at an agreement but also asks whether Protiviti exercised control over Silvers.  *See Mark Six Realty Assocs., Inc. v. Drake*, 463 S.E.2d 917, 919-20 (1995) (concluding that evidence existed that a real estate agent was not an independent contractor because the brokerage retained the right to, and did, exercise control over the time, manner, and method in which agent performed her duties).  Here, Protiviti maintained the right under its agreement with Silvers to ███████████████ ███████████████████████  *See* Subcontractor Services Agreement ¶¶ 1(b) and 3(c).

party (a signatory on the contract at issue) acted as the defendant's agent in executing the contract and thus the plaintiff could obtain complete relief from the defendant with respect to breach of the contract.[5]  *Orange Peach Line*, 2015 WL 222311, at *13.  Furthermore, an agent is bound by any injunction against his principal while acting in that capacity.  *RDK Corp. v. Larsen Bakery, Inc.*, No. 02-C-0675, 2006 WL 2168797, at *12 (E.D. Wis. July 31, 2006) (citing *Pasco Int'l (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 501 (7th Cir. 1980)).  Thus, if the Court grants Adams Keegan the injunctive relief it seeks, then Silvers (as Protiviti's employee and/or agent) would also be bound by such an injunction.

In its First Amended Complaint, Adams Keegan seeks, in relevant part, an injunction preventing Protiviti (and its agents and those acting in concert with it) from infringing or otherwise using the ADAMS KEEGAN and EFFICENTER Trademarks and Adams Keegan's HTML code, requiring the destruction of any such materials bearing the trademarks or the HTML code, and requiring the assignment of the fake myefficenter.com website to Adams Keegan.  *See generally* Am. Compl., Prayer for Relief ¶¶ 1-3, 15.  Adams Keegan does not seek any relief against Silvers that either is not actually directed at Protiviti or that Protiviti cannot control.  *See* Subcontractor Services Agreement ¶¶ 1, 3-4.  At a minimum, Silvers is an agent of Protiviti and appears to actually be an employee based on Manning's statements.  *See* Call Tr. at 4:18-19; 4:23-24 ("So Chris Silvers is our pen tester. . . . He works for Protiviti.").  Regardless of whether Silvers is Protiviti's agent, employee, or contractually bound by virtue of the Subcontractor Services Agreement to ███████████████ (or likely all three), Protiviti can direct Silvers ███████████████████████ sought in Adams Keegan's First Amended Complaint.  *Id.*  Thus, because complete relief can be accorded to the existing parties in this

---

[5]  The *Orange Peach Line* court also noted that the defendant may be able to seek contribution from the purported required party, but that "the fact that [the absent party] could also be liable . . . to the same extent as the defendants . . . does not mean that the court must compel [the absent party] to appear as defendants."  2015 WL 222311, at *13.

litigation on Adams Keegan's claims, Silvers is not a required party under the first test of Rule 19(a).

### b.      Silvers Is Not A Required Party Under The Second Rule 19 Test.

The second Rule 19 test for a required party has two requirements, which consider whether the absent party: (i) "claims an interest relating to the subject of the action"; and (ii) is so situated that disposing of the action in its absence may either (a) impair or impede the absent party's ability to protect that interest or else (b) may leave an existing party subject to a substantial risk of incurring inconsistent obligations. Fed. R. Civ. P. 19(a)(1)(B).

### (1)      Silvers Has Not Claimed An Interest To The Subject Matter.

First, a party must claim an interest in this litigation to be considered a necessary party. *See Century Bus. Servs. v. Bryant*, 69 Fed. App'x. 306, 311 (6th Cir. 2003) ("A party is **not** necessary where it has not claimed an interest in the outcome of an action and complete relief can be ordered in its absence.") (emphasis added) (internal quotations omitted).  A "claim" by the absent interest requires an affirmative act by that party.  *Harvill v. Harvill*, No. 3:12-CV-00807, 2013 WL 1245729, at *4 (M.D. Tenn. Mar. 27, 2013) (holding that Rule 19(a)(1)(B) "demand[s] more than a finding that the absent party may have an interest, but instead affirmatively requires that the absent party *claim* the interest").  The Court should also consider whether Silvers had the opportunity to intervene to protect its interest but declined to participate. *See City of Pontiac,* 584 F.3d at 266 (in finding absent parties were not required parties, court evaluated that absent parties could have intervened, and chose not to intervene).  Otherwise, "it would turn Rule 19 analysis on its head to argue that the [absent party's] interests are now impaired because [it] declined to participate in a case that [it] knew about." *Id.*

14

Here, Silvers has not made any affirmative claim in this lawsuit although Silvers is certainly aware of the litigation.  *See id.* (noting that the purported required parties "had the opportunity to intervene to protect that interest but declined to participate" and thus do not fall within either Rule 19 category); *see also* Call Tr. at 2:5-9 (stating that Manning spoke with Silvers about Adams Keegan's response to the phishing email scheme and fake myefficenter.com website).  Notably, Protiviti does not make any effort in its motion to argue that Silvers has made any affirmative claim of interest.  Because a prerequisite of Rule 19(a)(1)(B) requires that a party must first claim an interest in the pending action, and because Protiviti has failed to make such a showing, Silvers is not a required party.  The Court's analysis need not proceed further.

### (2)      Protiviti Can Adequately Protect Any Interest of Silvers and the Parties Will Not Be Subject To Inconsistent Obligations.

Even if Protiviti could prove that Silvers has affirmatively claimed an interest here, Protiviti nevertheless could adequately protect that interest.  Joinder is not required if an existing party will adequately represent the absent party's interests.  *City of Pontiac*, 584 F.3d at 266 ("Joinder is not required if the absent party's interests are adequately represented by the existing parties"); *Elec. Energy*, 2010 WL 4975550, at *3 (same).  As an employee of Protiviti or as Protiviti's agent under contract with Protiviti, Silver's interests are aligned with those of Protiviti and any hypothetical interest[6] Silvers may have in this case will be adequately represented by Protiviti.

Further, and more importantly, the burden is on Protiviti to articulate what, if any, inconsistent obligations Silvers may face.  *Williams-Sonoma Direct, Inc. v. Arhaus, LLC*, 304

---

[6] Protiviti argues that Silvers is a required party because Silvers owns the fake myefficenter.com website and thus (it is assumed) is the only party that can purportedly assign the rights to the website.  *See, e.g.,* Mot. at 4, 6.  This argument is baseless in light of ████████████████████████████ discussed *supra*.

F.R.D. 520, 533 (W.D. Tenn. 2015).  Protiviti has wholly failed to do so.  In fact, neither Protiviti nor Silvers will be subject to inconsistent obligations.  "Rule 19 does not speak of inconsistent 'results.'  Rather, it speaks in terms of inconsistent 'obligations.'" *Bedel v. Thompson*, 103 F.R.D. 78, 81 (S.D. Ohio 1984). "[W]hether a party faces the possibility of multiple actions—and potentially even logically inconsistent judgments—is irrelevant if the party is not at risk of inconsistent obligations." *Williams-Sonoma Direct*, 304 F.R.D. at 533.

The remedies Adams Keegan seeks would not leave Silvers or Protiviti subject to inconsistent obligations.  Indeed, Protiviti offers no hypothetical situation wherein a separate obligation as to Adams Keegan's trademarks and copyrighted HTML code could exist.  *See Vermeer Heartland of Tenn., LLC v. Earth Tool Co., LLC*, 2011 U.S. Dist. LEXIS 25897, *6, *10-11 (M.D. Tenn. Mar. 14, 2011) (finding absent party, the obligee to the contract, was not required because the relief sought by plaintiffs will not create inconsistent obligations for defendants).  Protiviti, not Adams Keegan, shoulders the heavy burden of proof on its Rule 12(b)(7) motion.

Accordingly, Protiviti has not come close to satisfying its burden of proof under Rule 19 and to attempt to do so would violate Rule 11 because the facts preclude such assertions from being made in good faith here.  Incredulously, Protiviti contends Silvers will lose "an interest in its own property and freedom to conduct business."  Mot. at 6.  But Silvers ███████████████ ████████████████████████ of the Subcontractor Services Agreement and the only "freedom" Silvers may lose is the freedom to infringe Adams Keegan's trademarks and HTML code.  Yet, there is no right to infringe another's trademarks or copyrights.  *3M Co. v. Mohan*, No. CIV. 09-1413 ADM/FLN, 2010 WL 5095676, at *24 (D. Minn. Nov. 24, 2010), *aff'd*, 482 F. App'x 574 (Fed. Cir. 2012) ("Defendant has no right to infringe [plaintiff's] trademarks . . . .").  Courts do

16

not join parties just because there is the potential or even the likelihood that subsequent litigation with the absent party could occur.  *City of Pontiac*, 584 F.3d at 266.  The Court should deny Protiviti's motion as a matter of law.

### 3. Even if Silvers Were A Required Party, Silvers Is Not An Indispensable Party.

The Court need not reach any Rule 19(b) analysis because, as demonstrated above, Silvers is not a required party under Rule 19(a).  Nevertheless, even if Silvers were a required party, Silvers is not an indispensable party, and thus dismissal would be improper.

The Sixth Circuit has determined that if the case can properly proceed without the absentee, it need not be dismissed.  *City of Pontiac*, 584 F.3d at 265.  The court's determination is "guided by pragmatic considerations, rather than technical or formalistic legal distinctions." *Hooper v. Wolfe*, 396 F.3d 744, 749 (6th Cir. 2005).  There are four factors that the court should balance: (1) the extent a judgment might prejudice the absent or an existing party; (2) whether the court could shape the relief to prevent prejudice; (3) the adequacy of a judgment rendered without the absent party; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed.  *Id.*  Here, all four factors counsel against dismissal.

Regarding the first two factors of Rule (19)(b), "an absent party's interests cannot be harmed or impaired if they are identical to those of a present party."  *Bacardi Int'l Ltd. v. V. Suarez & Co.*, 719 F.3d 1, 11 (1st Cir. 2013) *cert. denied*, 134 S. Ct. 640 (U.S. 2013); *cf. Hooper*, 396 F.3d at 750 (holding that partnership need not be joined because "there is no reason to believe that the general partner of [the partnership] will not adequately represent the interests of the partnership as an entity").  As discussed above, a judgment rendered in Silvers's absence does not prejudice Silvers's interests because those interests are thoroughly protected by Protiviti.  And as to the third Rule 19(b) factor, adequacy refers to "the public stake in settling

17

disputes by wholes, whenever possible." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 870 (2008) (internal quotation marks and citation omitted).  Any judgment against Protiviti in Silvers's absence would be adequate, because the relief requested by Adams Keegan does not harm Silvers (despite Protiviti's unsupported contentions). Silvers ████████████████████████ ██████████████████████████████████████████████████ the phishing email scheme in light of the Subcontractor Services Agreement.  Silvers has not made any affirmative claim to an interest in, or intervened in, this litigation.  Thus, there would be no credible risk of additional piecemeal litigation.

Silvers is not a required party as Protiviti contends, much less an indispensable one, especially since Silvers's interests are virtually identical to those of Protiviti and will therefore be adequately represented by Protiviti.  *Glassman, Edwards, Wade & Wyatt, P.C. v. Wolf, Haldenstein Adler Freeman & Herz, LLP*, 601 F. Supp. 2d 991, 1000-02 (W.D. Tenn. 2009) (citing *American Express Travel Related Services, Co., Inc. v. Bank One–Dearborn, N.A.*, 195 Fed. Appx. 458, 460 (6th Cir. 2006)).

**C.**   **If Silvers Were a Necessary Party, the Court May Easily Join Silvers Because the Agreement Relied Upon by Protiviti Demonstrates Jurisdiction and Venue Are Proper in This Court.**

Protiviti's argument that "there is no evidence that Silvers can be joined in the present action" (Mot. at 1) is again a factually incorrect statement and is directly contradicted by the Subcontractor Services Agreement.  The Work Schedule attached to the agreement states that ██████████████████████████████████████████████████████ *See* Work Schedule, Ex. to Subcontractor Services Agreement.  Thus, the Court likely has specific personal jurisdiction over Silvers as ██████████████████████████ and Protiviti admits the agreement goes to the heart of the dispute. *See CJ Advert., LLC v. Whitehardt, Inc.*,

No. 3:10-0214, 2010 WL 3260068, at *5 (M.D. Tenn. Aug. 18, 2010) (finding personal jurisdiction over the defendant based in part on the parties' contract in Tennessee, among other reason).  And, because the Court has personal jurisdiction over Silvers, venue is proper in the Western District of Tennessee.

Venue lies in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1).  For a corporate entity defendant, the corporate entity is deemed to reside in any judicial district in which it is subject to the Court's personal jurisdiction with respect to the civil action in question.  *Id.* at § 1391(c)(2).  Here, Silvers is subject to personal jurisdiction in Tennessee based on at least specific  personal  jurisdiction  ████████████████████████████████████.  Accordingly, under 28 U.S.C. § 1391, Protiviti and Silvers are deemed to reside in Tennessee, and venue is proper in the Western District of Tennessee because Protiviti is deemed to reside in this district.  *See CJ Advert.*, 2010 WL 3260068, at *7 (applying § 1391 and finding venue proper).

Incredulously, Protiviti now contends "there is no indication that Tennessee is the proper venue for what appears to be a solo business located in Georgia."  Mot. at 6.  Yet, the very agreement upon which Protiviti relies states ████████████████████████████  ████ thus, there *is* every indication in Protiviti's own motion that Tennessee is the proper venue for a claim against Silvers given that the Court has personal jurisdiction over Silvers based upon the Subcontractor Services Agreement.[7]

---

[7]  At a minimum and certainly in lieu of any dismissal, Adams Keegan respectfully submits that it should be allowed to take expedited jurisdictional discovery and depose Silvers and a Rule 30(b)(6) representative of Protiviti regarding whether this Court has personal jurisdiction over Silvers and regarding Silvers's employment relationship with Protiviti.

**D.**     **In the Alternative, Adams Keegan Respectfully Requests the Court Exercise Its Discretion and Restructure the Relief Requested by Adams Keegan to Avoid the Harsh Result of Dismissal.**

While Silvers is not an indispensable party for the reasons set forth above, Adams Keegan respectfully submits that, in alternative to dismissal of Adams Keegan's claims against Protiviti, the Court should restructure the relief to avoid the issue of Silvers's absence. *See Jota v. Texaco Inc.*, 157 F.3d 153, 162 (2d Cir. 1998) (holding that, under Rule 19, the Court or the plaintiff can restructure the requested relief to lessen or avoid prejudice to an absent party). Meaningful relief can be granted to the parties before the Court in a multitude of ways (subject to the Court's discretion), including but not limited to omitting any mention of Silvers in the Prayer for Relief, and would be in line with the Sixth Circuit's "pragmatic approach" to Rule 19 cases. *City of Pontiac*, 584 F.3d at 265.

## IV.     <u>CONCLUSION</u>

For the reasons set forth above, Protiviti's Motion to Dismiss under Rule 12(b)(7) is procedurally erroneous and wholly without merit, and Adams Keegan respectfully requests that the Court deny the motion as a matter of law.

Dated: July 11, 2016                         Respectfully submitted,

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.**

s/ Adam S. Baldridge
Adam S. Baldridge (TN Bar No. 23488)
Nicholas L. Vescovo (TN Bar No. 30387)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
Tele: (901) 577-2102
Fax:  (901) 577-0838
165 Madison Avenue
2000 First Tennessee Building
Memphis, Tennessee 38103

20

*Attorneys for Plaintiff Adams Keegan, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of July, 2016, a true and correct copy of the foregoing document was served on counsel of record, via the Court's CM/ECF system and/or email.

s/ Adam S. Baldridge
Adam S. Baldridge